UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>          Plaintiff,<br><br>     v.<br><br>FOOD AND DRUG ADMINISTRATION, et al.,<br><br>          Defendants. | Civil Action No. 25-0832 (TSC) |

## DEFENDANTS' MOTION FOR AN EIGHTEEN-MONTH STAY OF PROCEEDINGS

Defendants, the United States Department of Health and Human Services ("Department") and Food and Drug Administration ("FDA") (collectively "Defendants"), by and through undersigned counsel, move to stay this suit for eighteen months because exceptional circumstances exist and FDA, whose records are sought, is exercising due diligence in responding to the Freedom of Information Act ("FOIA") request at issue.  5 U.S.C. § 552(a)(6)(C).  Alternatively, the Court may grant this stay using "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

In support of this motion, Defendants respectfully submit the attached memorandum in support and Declaration of Suzann Burk, Director of the Division of Disclosure and Oversight Management in FDA's Center for Biologics Evaluation and Research ("CBER"), whose office is responsible for processing of FOIA requests for CBER records.  A proposed order is included with this motion.

Pursuant to Local Civil Rule 7(m), undersigned counsel has conferred with Plaintiff's counsel, who oppose this motion.

Dated: June 16, 2025
      Washington, D.C.

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and
  Human Services
Chief Counsel for Food, Research, and
  Drugs

WENDY VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH NORFORD
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

By:*/s/ John C. Truong*
JOHN C. TRUONG
D.C. Bar # 465901
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2524
John.Truong@usdoj.gov

*Attorneys for the United States of America*

2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>        Plaintiff,<br><br>    v.<br><br>FOOD AND DRUG ADMINISTRATION, et al.,<br><br>        Defendants. | Civil Action No. 25-0832 (TSC) |

**MEMORANDUM IN SUPPORT OF**
**DEFENDANTS' MOTION FOR AN EIGHTEEN-MONTH STAY OF PROCEEDINGS**

**TABLE OF CONTENTS**

INTRODUCTION .................................................................................................................1

PLAINTIFF'S FOIA REQUEST ........................................................................................3

LEGAL STANDARDS .......................................................................................................4

    I.    5 U.S.C. § 552(a)(6)(C)(i)............................................................................. 4

    II.    Inherent Authority to Stay Proceedings Under *Landis* .................................7

ARGUMENT ......................................................................................................................8

I.    The Court Should Grant an Eighteen-Month Stay Under 5 U.S.C. § 552(a)(6)(C)(i)  Because FDA Can Demonstrate "Exceptional Circumstances" and "Due Diligence." ...........................8

    A.    The Court Orders in PHMPT I and PHMPT II Constitute "Exceptional Circumstances," which are Exacerbated by Increased Workload Obligations. ........................... 9

    B.    FDA Has Been Exercising "Due Diligence" ............................................... 14

II.    The Court Should Exercise Its Inherent Authority to Issue the Stay Under Landis..................17

III.    FDA Must Exercise Due Care in Its Processing of Potentially Responsive Records. ...................... 19

CONCLUSION ..................................................................................................................20

i

# TABLE OF AUTHORITIES

**Cases**                                                                                        **Page(s)**

*Appleton v. FDA,*
    254 F. Supp. 2d 6 (D.D.C. 2003) ................................................................................ 6

*Belize Soc. Dev. Ltd. v. Gov't of Belize,*
    668 F.3d 724 (D.C. Cir. 2012) ................................................................................ 17

*Campaign for Accountability v. Dep't of Just.,*
    280 F. Supp. 3d 112 (D.D.C. 2017) .......................................................................... 7

*Children's Health Defense v. CDC,*
    Civ. A. No. 23-0431 (TNM), 2024 WL 3521593 (D.D.C. July 24, 2024) ................................... 7, 19

*Democracy Forward Found. v. Dep't of Just.,*
    354 F. Supp. 3d 55 (D.D.C. 2018) ........................................................................... 6

*Elec. Frontier Found. v. Dep't of Just.,*
    517 F. Supp. 2d 111 (D.D.C. 2007) ................................................................... 4, 5, 14

*Elec. Frontier Found. v. Off. of Dir. of Nat'l Intel.,*
    Civ. A. No. 08-1023, 2009 WL 773340 (N.D. Cal. Mar. 23, 2009) ........................................ 7

*Energy Future Coal. v. Off. of Mgmt. & Budget,*
    200 F. Supp. 3d 154 (D.D.C. 2016) ........................................................ 5, 6, 14, 15, 16, 17

*Food Mktg. Inst. v. Argus Leader Media,*
    588 U.S. 427 (2019) ................................................................................ 7, 18, 19, 20

*Huddleston v. FBI,*
    Civ. A. No. 20-0447, 2021 WL 1837548 (E.D. Tex. May 7, 2021) ...................................... 7

*Hulley Enters. Ltd. v. Russian Fed'n,*
    502 F. Supp. 3d 144 (D.D.C. 2020) ....................................................................... 18

*Landis v. N. Am. Co.,*
    299 U.S. 248 (1936) ................................................................................ 1, 2, 3, 4, 7

*Nat'l Sec. Archive v. SEC,*
    770 F. Supp. 2d 6 (D.D.C. 2011) ........................................................................... 5

*Open America v. Watergate Special Prosecution Force,*
    547 F.2d 605 (D.C. Cir. 1976) ............................................................................ 1, 4

*Shapiro v. Dep't of Just.,*
    Civ. A. No. 12-313 (BAH), 2014 WL 12912625 (D.D.C. Dec. 8, 2014) ................................ 5

**Statutes**

5 U.S.C. § 552(a)(6)(A)(i) .................................................................................... 4

5 U.S.C. § 552(a)(6)(C) .................................................................................... 1, 3

5 U.S.C. § 552(a)(6)(C)(i) ................................................................................................ 4, 8

5 U.S.C. § 552(a)(6)(C)(ii) ............................................................................................... 5-6

Section 552(a)(6)(C) ......................................................................................................... 4

Section 552(a)(6)(C)(i) ...................................................................... 8, 4, 8, 9, 10, 11, 12, 13

## Other

Local Civil Rule 7(m) ....................................................................................................... 2

**INTRODUCTION**

Defendants, the Department of Health and Human Services ("Department" or "HHS") and the Food and Drug Administration ("FDA") (collectively "Defendants"), submit this memorandum in support of their Motion for an Eighteen-Month Stay of Proceedings.  FDA seeks a stay under 5 U.S.C. § 552(a)(6)(C) and *Open America v. Watergate Special Prosecution Force*, 547 F.2d 605 (D.C. Cir. 1976), because "exceptional circumstances exist" and the agency "is exercising due diligence" in responding to Plaintiff's Freedom of Information Act ("FOIA") request.  Alternatively, FDA seeks a stay under "the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants."  *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

Exceptional circumstances exist because of four orders entered in two FOIA cases pending in the Northern District of Texas.  *See Pub. Health & Med. Pros. for Transparency* ("*PHMPT*") *v. FDA*, Civ. A. No. 21-1058 (N.D. Tex.) ("*PHMPT I*") and *PHMPT v. FDA*, Civ. A. No. 22-0915 (N.D. Tex.) ("*PHMPT II*").  Under those out-of-circuit orders, the disclosure office within the Center for Biologics Evaluation and Research ("CBER") that is responsible for reviewing and releasing records maintained by CBER is facing an unprecedented workload requiring FOIA productions involving more than 9 million pages of COVID-19 vaccine records by October 1, 2026.[1]  Under these orders, CBER's disclosure office was required to process and produce at least 90,000 to 110,000 pages per month from July 2023 through November 2023.  Ex. A, Declaration of Suzann Burk ("Burk Decl.") ¶ 8.  It is required to produce at least 180,000 pages per month thereafter, with production to be completed by October 1, 2026.  *Id.*  And to meet the initial Texas

---

[1] *See* Order, ECF No. 35, *PHMPT I* (Jan. 6, 2022); Mem. Op. & Order, ECF No. 101, *PHMPT I* (Dec. 6, 2024); Order, ECF No. 31, *PHMPT II* (May 9, 2023); Am. Order, ECF No. 52, *PHMPT II* (June 9, 2025); *see also* Ex. A hereto (Declaration of Suzann Burk ("Burk Decl.")) ¶ 10.

court's order, CBER's disclosure office had to produce, at times, more than 230,000 pages per month.  *Id.* These unprecedented productions have been ordered alongside a backdrop of other increased workload obligations, including a significant increase in incoming FOIA requests and FOIA litigation, stemming, in large part, from requests related to CBER's work pertaining to the COVID-19 pandemic.  *Id*.  Plaintiff has contributed to this increased workload by submitting approximately 350 separate FOIA requests seeking CBER records since 2019, an average of one new request every six days.  *Id.* ¶ 29.  Approximately 220 of Plaintiff's submitted requests remain pending.  *Id*.

In the face of these demands, FDA has been exercising due diligence.  It has made, and continues to make, extraordinary efforts to hire and train new staff and maximize efficiencies to comply with the *PHMPT* orders and its other FOIA obligations.  Among other things, in 2022, CBER's disclosure office hired and trained contractors (approximately nine full-time and one part-time) to focus on processing records in *PHMPT I*, at an estimated cost of approximately $3.5 million through November 2023.  *Id.* ¶ 32.  Because of *PHMPT II*, CBER's disclosure office significantly increased the number of contractors and also brought on board six more full-time employees between June and December 2023 and five additional employees in 2024.  *Id.* ¶ 34. However, it takes approximately two years for new employees to be adequately trained, and the training process initially slows the pace of processing outstanding requests because more senior employees must review the new employees' work carefully to ensure that records are being correctly reviewed for necessary redactions.  *Id.* ¶ 36.  Thus, despite best efforts and the good-faith investment in increasing its future processing capacity by training new employees, CBER's FOIA office resources were necessarily limited during this lengthy onboarding period.  *Id*.  Additionally, a hiring freeze went into effect in January 2025; FDA in recent months has faced unanticipated

staff disruptions, and permanent staff and contractors have departed the agency. Although all these factors have operated in tandem to further constrain CBER's resources, CBER's disclosure office has continued to the best of its ability to process FOIA requests. *Id.* ¶ 12.

In addition to the power to grant a stay under *Open America* and 5 U.S.C. § 552(a)(6)(C), this Court also has inherent authority to grant a stay under *Landis*. To issue a *Landis* stay, a court weighs the specific hardships to the parties and the interest in judicial economy. *See* 299 U.S. at 255. Here, FDA has experienced specific, unanticipated, and unprecedented hardships arising from *PHMPT I* and *PHMPT II*, and the requested stay will not harm Plaintiff.

Accordingly, this Court should grant an eighteen-month stay, which will end shortly after the final *PHMPT* production is to be completed. At the end of the stay, Defendants will be in a better position to report to the Court on the status of that production, FDA's circumstances, and when FDA expects to be able to process the records sought in this case. An eighteen-month stay will help CBER's disclosure office triage its limited resources to respond to the broad range of requests it continues to receive, while complying with the *PHMPT* orders and helping FDA to ensure that, when CBER's disclosure office is able to turn to the records at issue here, it can conduct a careful review to determine releasability.

## PLAINTIFF'S FOIA REQUEST

This action stems from a FOIA request submitted by Plaintiff on January 23, 2020, which was assigned FOIA Request No. 2020-819, seeking email communications that include the terms "Informed Consent Action Network" or "ICAN" or "Bigtree" or "Del" and also include certain FDA employee names or email addresses on the "To," "From," "Cc" or "Bcc" line. Plaintiff's request was placed in the Complex Track because of the time expected to process it. Burk Decl. ¶ 40; *see id.* ¶ 17 (describing FOIA queues). CBER's disclosure office also determined, following consultation with counsel, that this case was an appropriate one in which to seek a stay in order to

maximize its ability to meet the *PHMPT* production order deadlines. *Id.* ¶¶ 37, 41).  During this time, Plaintiff's FOIA request will maintain its place in the Complex Track while CBER's disclosure office processes FOIA requests pending ahead of Plaintiff's, which is behind 23 earlier submitted requests in the Complex Track as of May 30, 2025. *Id.* ¶¶ 39, 43.

## LEGAL STANDARDS

To obtain a stay in a FOIA case, the government may satisfy the requirements of either 5 U.S.C. § 552(a)(6)(C)(i) or *Landis*.

## I.      5 U.S.C. § 552(a)(6)(C)(i)

Generally, an agency that has received a FOIA request is expected to "determine within 20 days (excepting Saturdays, Sundays, and legal public holidays) after the receipt of any such request whether to comply with such request."  5 U.S.C. § 552(a)(6)(A)(i).  However, under Section 552(a)(6)(C)(i), "[i]f the Government can show exceptional circumstances exist and that the agency is exercising due diligence in responding to the request, the court may retain jurisdiction and allow the agency additional time to complete its review of the records."  *Id.* § 552(a)(6)(C)(i).

Section 552(a)(6)(C) received its definitive interpretation in *Open America.*  There, the D.C. Circuit explained that "exceptional circumstances" existed to justify a stay within the meaning of Section 552(a)(6)(C)(i) when "an agency . . . is deluged with a volume of [FOIA] requests for information vastly in excess of that anticipated by Congress" and "when the existing resources are inadequate to deal with the volume of such requests within the time limits" provided by FOIA.  547 F.2d at 616.  The D.C. Circuit also found that the agency was exercising "due diligence" because it had a large staff, separated between complex and simple cases, and handled cases on a first-in, first-out system.  *Id.* at 613.  Congress subsequently amended FOIA to endorse the logic of *Open America*.  *See Elec. Frontier Found. v. Dep't of Just.*, 517 F. Supp. 2d 111, 116-17 (D.D.C. 2007) (explaining the 1996 amendments to FOIA).

4

Exceptional circumstances exist when there is, for example, a substantial, unpredictable increase in the number of FOIA requests that an agency receives. *See id.* at 119 (finding "exceptional circumstances" when there was a one-third increase in FOIA requests and inadequate numbers of staff available to handle the increased volume); *Shapiro v. Dep't of Just.*, Civ. A. No. 12-313 (BAH), 2014 WL 12912625, at *2 (D.D.C. Dec. 8, 2014) (finding "exceptional circumstances" where a repeat plaintiff filed eighty-one FOIA requests with the agency totaling 375,000 pages and comprising six to seven percent of the agency's monthly intake, and the agency "could not reasonably have planned for a single citizen to consume such a vast quantity of the agency's FOIA resources").

Exceptional circumstances also can be shown by an increase in FOIA litigation. For example, exceptional circumstances exist where "resources—and most notably, FOIA staff members—ha[d] been diverted to assist with multiple FOIA lawsuits, at least five of which are particularly resource-intensive and involve tens of thousands of documents." *Nat'l Sec. Archive v. SEC*, 770 F. Supp. 2d 6, 9 (D.D.C. 2011). A combination of increased FOIA requests and litigation can also demonstrate "exceptional circumstances." *Energy Future Coal. v. Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 161-62 (D.D.C. 2016) (finding "exceptional circumstances" and granting six-month stay of FOIA proceedings where an agency had sixty-eight pending FOIA requests, twenty-seven of which predated plaintiffs' request, and was in litigation in two other FOIA cases).

When an agency demonstrates exceptional circumstances that rise above a predictable workload of requests, it does not need to show that it is reducing the backlog of pending requests to receive a stay. *See* 5 U.S.C. § 552(a)(6)(C)(ii) (adding limits to "exceptional circumstances" that apply only when a delay results from a "predictable agency workload of requests," in which

case an agency must show "reasonable progress in reducing its backlog of pending requests"); *Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 60 (D.D.C. 2018) ("Because the court finds that exceptional circumstances exist based on the dramatic increase in FOIA requests and the agency's exercise of due diligence in responding to those requests, the court need not reach the question whether Defendant is making reasonable progress in reducing its backlog.").

An agency acts with due diligence when it processes requests on a first-in, first-out basis, *see, e.g.*, *Appleton v. FDA*, 254 F. Supp. 2d 6, 10 (D.D.C. 2003) (concluding that "defendants have demonstrated good-faith efforts and due diligence in processing the plaintiff's request on a first-in, first-out basis"). Alternatively, an agency acts with due diligence when it processes requests in a "multi-track" system of "simple" requests, which can be processed more quickly, and "complex" requests, which take longer to process, *see Energy Future Coal.*, 200 F. Supp. 3d at 162 (finding that "[the agency] has exercised due diligence by processing Plaintiffs' FOIA request within [the agency's] 'multi-track' processing system," under which "[the agency] resolves 'simple' and 'expedited' requests in an expedited fashion, while [the agency] concurrently responds to 'complex requests' by making rolling productions"). An agency may also show due diligence by reorganizing its resources to better respond to increased FOIA requests, or by pursuing additional funding or employees, although the latter steps are not required. *Democracy Forward Found.*, 354 F. Supp. 3d at 62 (finding "due diligence" based on agency's efforts to reorganize staff and create complex and expedited queues in response to increased FOIA requests, even where agency did not seek additional funding for FOIA processing or increase the number of employees).

A stay, moreover, will help ensure that CBER's disclosure office, when in a position to begin processing Plaintiff's request, will have the resources available to safeguard the "important

6

interests" that the FOIA exemptions protect, including, among other things, the personal, medical, and other sensitive information of absent third parties. *See, e.g.*, *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 439 (2019) (cleaned up).

## II.    <u>Inherent Authority to Stay Proceedings Under *Landis*</u>

An alternative ground for issuance of a stay is a court's exercise of its inherent authority to control its docket. *Landis*, 299 U.S. at 254. "The power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Id.* To issue a *Landis* stay, a court balances competing interests, weighing the specific hardships to the parties and the interest in judicial economy. *See id.* at 255. Courts have specifically applied *Landis* to grant stays in FOIA cases. *See, e.g.*, *Children's Health Defense v. CDC*, Civ. A. No. 23-0431 (TNM), 2024 WL 3521593, at *5-6 (D.D.C. July 24, 2024) (granting stay pursuant to *Landis* to, among other things, (i) avoid adding to agency burden from extraordinary production order imposed by another court, (ii) prevent risk of interference with stayed cases involving the same documents, and (iii) maintain fairness to other requesters waiting in the queue longer than plaintiff); *Huddleston v. FBI*, Civ. A. No. 20-0447, 2021 WL 1837548, at *2 (E.D. Tex. May 7, 2021) (citing *Landis* to grant stay followed by production at "a standardized rate of 500 pages per month" due to "strained resources of their departments and significant volumes of other FOIA requests"); *Campaign for Accountability v. Dep't of Just.*, 280 F. Supp. 3d 112, 114-17 (D.D.C. 2017) (citing *Landis* and granting stay in FOIA action to allow Office of Legal Counsel to evaluate the agency's position regarding refined claims in an amended complaint); *see also Elec. Frontier Found. v. Off. of Dir. of Nat'l Intel.*, Civ. A. No. 08-1023, 2009 WL 773340, at *2-4 (N.D. Cal. Mar. 23, 2009) (granting *Landis* stay to plaintiff who requested time to review newly issued FOIA guidelines, defendant would not be prejudiced, and stay would further orderly course of justice).

**ARGUMENT**

**I.      The Court Should Grant an Eighteen-Month Stay Under 5 U.S.C. § 552(a)(6)(C)(i)**
**Because FDA Can Demonstrate "Exceptional Circumstances" and "Due Diligence."**

This Court should grant the requested stay under Section 552(a)(6)(C)(i) because FDA can show: (i) "exceptional circumstances" based on the unprecedented court orders requiring extraordinary productions in *PHMPT I* and *PHMPT II* and substantial increases in FOIA requests and litigation involving CBER's disclosure office, including numerous requests by Plaintiff; and (ii) "due diligence" based on processing FOIA requests in queues on a first-in, first-out basis and the herculean efforts CBER's disclosure office has taken to comply with the *PHMPT* orders, including hiring and training new staff and contractors, reorganizing, and triaging staff resources. As of March 20, 2025, the date Plaintiff filed its Complaint, FDA or HHS has moved to stay or to extend stays in thirteen FOIA cases seeking records maintained by CBER[2] (and is in the process

---

[2] *See* (1) Min. Order, ECF No. 28, *Wright v. HHS*, Civ. A. No. 22—1378 (RC) (D.D.C.), (Oct.13, 2023) (unopposed eighteen-month stay); *id.*, Motion to Extend Stay, ECF No. 48 (Apr. 25, 2025) (pending); (2) Min. Order, *Children's Health Defense v. FDA*, Civ. A. No. 23—2316 (LLA) (D.D.C. Dec. 13, 2023) (eighteen-month stay; six-month status report); *id.*, Min. Orders, (July 18, 2024 and Dec. 23, 2024) (extending stay); (3) Min. Order, ECF No. 27, *Informed Consent Action Network ("ICAN") v. FDA*, Civ. A. No. 23—0219 ( RBW) (D.D.C. Nov. 21, 2023) (vacating pending deadlines; six-month status conference); *id.*, Order, ECF No. 29 (May 24, 2024) and Min. Order (Nov. 25, 2024) (extending stay; six-month status conferences); (4) Order, ECF No. 25, *Children's Health Defense v. FDA*, Civ. A. No. 230220 (RDM) (D.D.C. Jan. 12, 2024)) (six-months stay; joint status report in six months); *id.*, Min. Order, (Oct. 24, 2024) (ordering FDA to begin processing responsive records no later than Aug. 9, 2026); (5) Order, ECF No. 28, *Children's Health Defense v. CDC*, Civ. A. No. 230431 (TNM) (D.D.C. Jul. 24, 2024) (six-month stay on HHS motion); *id.*, Min. Order, E(Jan. 24, 2025) (extending stay; joint status report every ninety days); (6) Order, ECF No. 23, *ICAN v. FDA*, Civ. A. No. 233282 (ABJ) (D.D.C. Oct. 11, 2024) (six-month stay; joint status report in six months); *id.*, Motion to Extend Stay, ECF No. 27 (March 14, 2025) (pending); (7) Min. Order, *ICAN v. FDA*, Civ. A. No. 23—3675 (JMC) (D.D.C. Sept. 4, 2024) (six-month stay); *id.*, Order, ECF No. 25 (Apr. 10, 2025) (extending stay through October 10, 2025); (8) Order, ECF No. 25, *John Solomon v. HHS*, Civ. A. No. 2—0572 (RBW) (D.D.C. Oct. 25, 2024) (stay of approximately twenty months, ending June 26, 2026; status conference scheduled for July 8, 2025); (9) Order, ECF No. 13, *ICAN v. FDA*, Civ. A. No. 24—1555 (RCL)

of filing eleven more, seven of which are in this district, including the instant one).[3]  Every court

in this district that has ruled on these motions has entered stays ranging from six to approximately

twenty months, finding the standard for entry of a stay satisfied; and no court has denied one.  *See*

n.3, *supra*.

**A.     The Court Orders in PHMPT I and PHMPT II Constitute "Exceptional Circumstances," which are Exacerbated by Increased Workload Obligations.**

CBER's disclosure office has been facing "exceptional circumstances."  The concurrent

court-ordered productions in *PHMPT I* and *PHMPT II* initially were thought by FDA to involve

approximately 5.7 million pages of COVID-19 vaccine-related records and collectively have

required the CBER disclosure office to produce records at rates ranging from a total of 90,000 to

180,000 pages per month since July 2023.  *See* Burk Decl. ¶ 8.  Those two cases have imposed on

FDA an extraordinary workload, still ongoing, that FDA could not have predicted, and FDA has

been working to the best of its ability to comply with those orders.  *Id.* ¶ 7.  Later, orders in *PHMPT*

*I* and *PHMPT II* have increased the total number of pages to be produced in both cases from

approximately 5.7 million to approximately 9.1 million pages, an increase of approximately sixty

percent.  *Id.* ¶ 10.  These increases have further strained the agency's limited resources and ability

to perform the requisite line-by-line and word-by-word review of all records that is necessary to

---

(D.D.C. Sept. 25, 2024) (withholding final ruling, 60-day interim stay); (10) Order, ECF No. 18, *ICAN v. FDA*, Civ. A. No. 24-1761-CJN (D.D.C. Nov. 20, 2024) (eight-month stay); (11) Order, ECF No. 17, *ICAN v. FDA*, Civ. A. No. 24—1905 (JDB) (D.D.C. Feb. 4, 2025) (six-month stay); (12) ECF No. 21, Order, *ICAN v. FDA*, Civ. A. No. 24-cv-1906-CRC (D.D.C. Apr. 10, 2025 Order) (six-month stay); (13) , Order, ECF No. 16, *ICAN v. FDA*, Civ. A. No. 23-1508 )CKK) (D.D.C. Oct. 3, 2023) (voluntary dismissal after stay motion filed).

[3] *ICAN v. FDA*, Civ. A. No. 25—0823 (JEB) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 250824 (AHA) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 250825 (RDM) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25—0826 (CJN) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25—0827 (JMC) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25—0828 (APM) (D.D.C.), filed Mar. 19, 2025; *see also* Burk Decl. ¶ 39.

protect confidential commercial and personal privacy information as required by law. *Cf.* ¶¶ 14-16 (describing FDA's obligation to protect information); 13 (noting line-by-line review process); 20 (same); and 38 (describing the training process).

In *PHMPT I*, the United States District Court for the Northern District of Texas ordered FDA to produce records beginning in March 2022 at an unprecedented average rate of 55,000 pages per month. *Id.* ¶ 31. The *PHMPT I* records comprised over 1.2 million pages related to Pfizer-BioNTech's Comirnaty vaccine for COVID-19, approved for individuals sixteen years of age and older. *Id.* The effort to comply with the production order necessitated the redirection of resources, thereby contributing to CBER's disclosure office's backlog of outstanding FOIA requests. *Id.* ¶ 33(A). Given that the production rate ordered in *PHMPT I* far exceeded, to FDA's knowledge, any FOIA production rate ever previously ordered by a court, CBER's disclosure office implemented immediate and sweeping organizational and work process changes including, among other things, hiring contractors and additional full-time employees at substantial expense, reorganizing staff, and diverting resources from processing other FOIA matters. *Id.* ¶ 32.

While CBER's disclosure office's extraordinary efforts to marshal resources to comply with the *PHMPT I* order were ongoing, FDA was sued in *PHMPT II*. *Id.* ¶ 33. In *PHMPT II*, the records at issue were estimated to be over 4.5 million pages relating both to FDA's approval of Pfizer's Comirnaty vaccine for twelve to fifteen-year-olds and Moderna's Spikevax vaccine. *Id.* In *PHMPT II*, the same court imposed an even more intense monthly production schedule on CBER. Order, ECF No. 38, *PHMPT II*. From July 2023 to November 2023, CBER's disclosure office was required to produce 90,000 to 110,000 pages per month in *PHMPT I* and *PHMPT II* collectively. *Id.* ¶ 8. Then, beginning in December 2023, CBER's disclosure office was required to produce 180,000 pages per month in *PHMPT II*. *Id.* ¶ 33(B). Production of all responsive

records was ordered to be completed by June 30, 2025. *Id.* ¶ 9. To FDA's knowledge, this production rate is many orders of magnitude greater than anything any agency has ever encountered in a FOIA production order. *Id.* ¶ 35.

In *PHMPT I,* a dispute that FDA did not anticipate arose as to whether an emergency use authorization file fell within the scope of the FOIA request. *Id.* ¶ 9. On December 6, 2024, the court held that it did and ordered that the processing of all records in that case be completed on or before June 30, 2025, which is the same production deadline entered in *PHMPT II*. *Id.*; *see* Mem. Op. & Order, ECF No. 101, *PHMPT I* (Dec. 6, 2024).[4] As a result, FDA was ordered to process approximately 600,000 additional pages of records in *PHMPT I* by June 30, 2025. Burk Decl. ¶ 9. Pursuant to a follow-on order in *PHMPT II*, FDA now must produce two additional EUA files containing approximately 2.8 million additional pages in *PHMPT II*, for a total increase in both cases of approximately 3.4 million pages. *Id.* ¶ 10. These additional records in turn increase the number of pages collectively sought from approximately 5.7 million to 9.1 million pages, an increase of approximately sixty percent. *Id.* ¶ 10. CBER's disclosure office anticipates meeting the June 30, 2025, deadline in *PHMPT I* and to ensure production of all documents in *PHMPT II*, the court modified the production schedule and ordered FDA to produce the additional 2.8 million pages of records at the previous court-ordered rate of at least 180,000 pages per month. *Id.* ¶¶ 10, 33(B); *see* Am. Order, ECF No. 52, *PHMPT II* (June 9, 2025) (entering negotiated schedule). At this rate, production is expected to be completed by the court's October 1, 2026, deadline. Thus, CBER's disclosure office has had to continue to allocate its limited resources to comply with the court's latest two orders.

---

[4] A month later, the court denied FDA's motion to alter the judgment by extending the processing deadline. Op. & Order, ECF No. 108 (Jan. 10, 2025).

While it tackles the unprecedented production orders in *PHMPT I* and *PHMPT II*, CBER's disclosure office has been facing an increase in FOIA requests and lawsuits, beginning in fiscal year 2020, including a significant number from Plaintiff. This surge in requests for CBER records imposes an agency workload that far exceeds anything reasonably "predictable."

Before the 2022 production order in *PHMPT I*, CBER's disclosure office was able to keep its FOIA queues relatively low and stable with nine staff and one supervisor. *Id.* ¶ 26. From fiscal years 2015 to 2018, the number of FOIA requests received by CBER each year ranged from 255 to 343, and the number of FOIA requests pending at the end of each year ranged from 39 to 54. *Id.* The number and complexity of FOIA requests began to increase in fiscal year ("FY") 2019. *Id.* ¶ 27. By FY 2021, CBER began to receive more than 500 requests annually, with 509 requests in FY 2021 and 633 requests in FY 2022. *Id.* By the end of FY 2022, the number of pending FOIA requests grew to 532. *Id.* In FY 2023, although the number of FOIA requests received declined to 487, the number of requests closed also declined to 336, while the number of pending requests increased to 679. *Id.* In FY 2024, the total number of pending requests increased again, to 859.[5] *Id.*

In addition, beginning in FY 2020, FOIA litigation also began to add significantly to the workload of CBER's disclosure office. From fiscal year 2019 to date, there were approximately fifty lawsuits filed seeking records maintained by CBER. *Id.* ¶ 28. Within the first five months of 2025, an additional eleven lawsuits were filed. *Id.* As of June 5, 2025, CBER's disclosure office had approximately thirty open litigation cases. *Id.*; *see id.* ¶¶ 26, 27 (tables summarizing trends related to increases in CBER's FOIA workload obligations).

Plaintiff's voluminous FOIA requests have significantly contributed to both trends. *See id.*

---

[5] This number is fluid and includes, for example, pending appeals.

¶ 29.  Since 2019, Plaintiff has submitted an astonishing 350 or more FOIA requests seeking records maintained by CBER.  *Id.*  In other words, for going on seven years now, Plaintiff has submitted, on average, a new FOIA request requiring search and review by CBER's disclosure office once every six calendar days.  To date, approximately 220 remain pending.  *Id.*  Further, ICAN is the plaintiff in approximately twenty-three of thirty-four of the open lawsuits seeking CBER records.  *Id.*  Likewise, ICAN is the plaintiff in all eleven of the lawsuits filed to date in 2025, including this one.[6]  *Id.*

In addition, Plaintiff's counsel, Siri & Glimstad LLP ("Siri"), also represents the plaintiffs in *PHMPT I* and *PHMPT II*.  *Id.* ¶ 11.  In recent years, CBER's disclosure office resources have been increasingly devoted to lawsuits by plaintiffs represented by Siri.  *Id.*  Indeed, Siri represents plaintiffs in the vast majority of the current FOIA litigation related to CBER records.  *Id.*  Plaintiff and Siri are well aware, if only from the stay motions FDA has filed, that their requests and lawsuits, and the *PHMPT* litigation orders that Siri obtained, have essentially monopolized CBER's FOIA processing capacity.

In granting a stay extension in another FOIA case brought by Plaintiff on April 10, 2025, the court noted that Plaintiff itself was partially to blame for the exceptional circumstances facing

---

[6] *See ICAN v. FDA*, Civ. A. No. 25-0823 (JEB) (D.D.C.), filed March 19, 2025; *ICAN v. FDA*, Civ. A. No. 25-0824 (AHA) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25-0825 (RDM) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25-0826 (CJN) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25-0827 (JMC) (D.D.C.), filed Mar. 19, 2025; *ICAN v. FDA*, Civ. A. No. 25-0828 (APM) (D.D.C.), filed Mar. 20, 2025; *ICAN v. FDA*, Civ. A. No. 25-0832 (TSC) (D.D.C.), filed Mar. 20, 2025; *Miss. Med. Pros. for Informed Consent & ICAN v. FDA*, Civ. A. No. 25-08162 (TBM/RPM) (S.D. Miss.), filed May 31, 2025; *Miss. Med. Pros. for Informed Consent & ICAN v. FDA*, Civ. A. No. 25-08163 (TBM/RPM) (S.D. Miss.), filed May 31, 2025; *Miss. Med. Pros. for Informed Consent & ICAN v. FDA*, Civ. A. No. 25-08164 (JHO/BWR) (S.D. Miss.), filed May 31, 2025; *Miss. Med. Pros. for Informed Consent & ICAN v. FDA*, Civ. A. No. 25-08165 (TBM/JRM) (S.D. Miss.), filed May 31, 2025.

FDA, stating:

> [T]he Court also recognizes that, to some extent, this is a problem of Plaintiff's own design. *See ICAN v. FDA*, No. 23-cv-219, ECF 31 at 10-12 (discussing the fact that Plaintiff's counsel here is also counsel of record in the *PHMPT* cases, and remarking, "[i]t seems to me you are creating a conundrum for yourself"). And regardless, the Court cannot ask the agency to do the impossible. The agency has demonstrated that it is continuing to exercise due diligence despite (increasingly) exceptional circumstances. The Court can ask no more.

*ICAN.*, Civ. A. No. 23-3675 (JMC).  *See also* Order, ECF No. 21, *ICAN*, Civ. A. No. 24-1906 (CRC) (April 10, 2025) (entering six-month stay, noting that the "enormous workload" in *PHMPT I* and *II* "has given Defendants little choice but to put other FOIA requests on the backburner").

The unprecedented *PHMPT* production orders, against the backdrop of substantially increased FOIA litigation and FOIA requests, including those submitted by Plaintiff and its counsel, far exceed a "predictable" agency workload and thus constitute the "exceptional circumstances" that justify a stay.  *See Elec. Frontier Found.*, 517 F. Supp. 2d at 119 (finding "exceptional circumstances" because the agency established more than a "predictable" or "routine" backlog based on a one-third increase in FOIA requests and insufficient staff available to handle the increased volume).

### B.    FDA Has Been Exercising "Due Diligence"

As described in the Burk Declaration, CBER's disclosure office has a multi-track process for handling FOIA requests, where requests are placed in one or more of six queues based on volume, complexity, and/or subject matter, and requests in each queue are generally assigned to reviewers for processing on a first-in, first-out basis.  *See* Burk Decl. ¶ 18.  This alone is sufficient to show "due diligence."  *Energy Future Coal.*, 200 F. Supp. 3d at 162 (finding "due diligence" based on a "multi-track" processing system separating "simple" and "complex" requests); *see ICAN v. FDA*, Civ. A. No. 24-1905 (JDB) (D.D.C. Feb. 4, 2025), ECF No. 17 (finding that first-

14

in, first-out FOIA processing "is alone evidence the agency is exercising due diligence"). But, as detailed below, FDA can demonstrate extraordinary efforts to comply with production orders while continuing to process FOIA requests that far exceed what is necessary to show "due diligence." To comply with the *PHMPT I* and *PHMPT II* orders and fulfill its other responsibilities stemming from increased FOIA requests and litigation, CBER's disclosure office undertook immediate and aggressive efforts to hire additional staff and contractors, seek funding, and reorganize its resources. Burk Decl. ¶¶ 32, 35. As noted above, before *PHMPT I*, CBER's disclosure office consisted of nine staff supervised by one supervisor. *Id.* ¶ 26. After the *PHMPT I* order, CBER's disclosure office made large-scale changes to its staff and work processes. Among other things, CBER's disclosure office hired contractors (nine full-time and one part-time) to focus on processing records for the *PHMPT I* litigation. *Id*. ¶ 32. The estimated cost of contractors alone for processing records in *PHMPT I* totaled approximately $3.5 million through the November 1, 2023, production date. *Id*. CBER's disclosure office was also able to assign nine full-time employees to focus primarily on the *PHMPT I* production, leaving a smaller team of six full-time employees to assume primary responsibility for all other FOIA requests. *Id.*

CBER's disclosure office continues to train contractors and new staff to support FOIA functions. *Id.* ¶ 36. Currently, six contractor positions remain. *Id.* However, this contract is currently set to expire this summer, and, though CBER is working diligently to obtain authorization to enter into a new contract for additional contractors, it is uncertain when that authorization will be granted. *Id.* Although these continued training efforts underscore the seriousness with which the agency takes its commitment to meeting its unprecedented FOIA obligations, they also cannot change CBER's workload capacity overnight or its need for a stay in this case.

15

When the *PHMPT I* production concluded, CBER's disclosure office was required to ramp up to a minimum of 180,000 pages per month in December 2023, although it needed to produce, at times, more than 230,000 pages per month to meet the *PHMPT II* deadline. *Id.* ¶¶ 8, 33(B). Since the *PHMPT II* order issued, CBER's disclosure office once again reallocated staffing, leaving only a handful of staff working on all other FOIA requests. *Id.* ¶ 34. It also increased the number of full-time employees (FTEs) and contractors. *Id.* ¶¶ 32, 35. CBER's disclosure office brought on board six new FTEs between Juneand December 2023 and five new FTEs, as well as additional contractors, in 2024. *Id.* ¶ 35. Of these eleven new FTEs, nine were assigned to newly established Special Disclosure Units ("Units"), and two were assigned to process FOIA requests unrelated to *PHMPT II* litigation. *Id.*

Since January 2022, CBER's disclosure office has been restructured to maximize efficiencies and to enhance capabilities with new employees. In particular, CBER's disclosure office added three supervisory positions and thirteen staff level positions. *Id.* ¶ 35. Two of the new supervisory positions head the Units, which consist of six staff positions each. *Id.* A total of twelve staff were onboarded to the Units, all of whom are relatively new. *Id.* However, since the beginning of this calendar year, three of the Unit staff have left the agency. *Id.* FDA has not been able to backfill those positions due to the hiring freeze that took effect in January 2025. *Id.*

While new employees are in training, current staff must spend time partnering with them to provide training and oversight. *Id.* ¶ 36. Staff must review new employees' work to ensure that personal privacy, trade secrets, and other protected information is not inadvertently disclosed. *See id.* ¶ 15 (describing prohibited disclosures). All told, after a new employee is onboarded, it takes approximately two years for an employee to be fully trained so that he or

16

she can meaningfully contribute to CBER's FOIA disclosure efforts. *Id.* ¶ 36. To date, the majority of Unit staff have less than the two years of required training to work without supervisory review and oversight, and be able to independently contribute to CBER's disclosure efforts. *Id.* ¶ 35.

Additionally, a recent, unanticipated staff disruption affecting CBER's disclosure office heightens the need for a stay. *Id.* ¶ 12. The January 2025 hiring freeze prevented CBER from hiring and training additional personnel, including backfilling positions vacated by departing employees. *Id.* ¶ 35. On April 1, 2025, staff in a number of FDA divisions, including some within CBER's disclosure office, received RIF notices and were placed on administrative leave. *Id.* ¶ 12. In May 2025, FDA rescinded RIF notices for FOIA staff within CBER's disclosure office and reincorporated those who agreed to return into their respective offices. *Id.* FDA continues to evaluate the cumulative impact of staff and contractor departures, a hiring freeze, and funding uncertainty on immediate operations, including CBER's processing of FOIA matters. *Id.*

The extraordinary efforts CBER's disclosure office has undertaken in significantly expanding its numbers of staff, training new employees, and reorganizing staff resources, all while complying with unprecedented production orders and managing multi-track queues of FOIA requests, more than demonstrate the "due diligence" needed for a stay.

**II.      The Court Should Exercise Its Inherent Authority to Issue the Stay Under Landis**

This Court may also exercise its equitable authority to enter a stay under *Landis*. A stay is appropriate when the movant's need "overrides the injury to the party being stayed." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (internal quotation marks omitted). Thus, courts consider: (1) the injury to the movant if the litigation proceeds without a stay, (2) the

17

injury to the non-movant in granting a stay, and (3) the court's interest in judicial economy. *See Hulley Enters. Ltd. v. Russian Fed'n*, 502 F. Supp. 3d 144, 152 (D.D.C. 2020). All three factors militate in favor of granting a stay here. *See Children's Health Def. v. CDC*, Civ. A. No. 23-0431 (TNM) (D.D.C. Jan. 24, 2025), ECF No. 28 (granting six-month stay under *Landis*).

*First*, FDA will suffer serious hardship if its response to the request at issue is required to move forward at this time. CBER's disclosure office already has been triaging its limited resources and working substantially at full capacity to address the extraordinary workload brought on by *PHMPT I* and *PHMPT II*, including the recent orders that resulted in a dramatic increase in the number of records to be reviewed and produced in those cases, and other essential obligations. The strain on CBER's disclosure office's resources is compounded by the potential impact of the hiring freeze and month-long hiatus caused by the RIF notices. CBER's disclosure office does not have the resources to search for and obtain responsive records, and conduct the required line-by-line review of additional records to protect confidential information. *See Argus Leader*, 588 U.S. at 439 ("FOIA expressly recognizes that 'important interests [are] served by [its] exemptions,' and '[t]hose exemptions are as much a part of [FOIA's] purpose[s and policies] as the [statute's disclosure] requirement.' So, just as we cannot properly expand Exemption 4 beyond what its terms permit, we cannot arbitrarily constrict it either by adding limitations found nowhere in its terms." (citations omitted; alterations in original)). Moreover, without the relief of a stay, FDA may be at risk of violating the *PHMPT* orders, which would subject the agency to the threat of sanctions.

*Second*, Plaintiff will not be injured by an eighteen-month stay, as it has not articulated a specific need, or a specific urgency, for the requested records. Moreover, even if hardship to Plaintiff were a possibility, such would not outweigh the hardship faced by FDA if a stay

were not granted. *See Children's Health*, 2024 WL 3521593, at *6 ("If the Court denies a stay, . . . [FDA] may be forced to violate a court-mandated processing order given the reality of its limited resources.").

*Third*, a stay will promote judicial economy by discouraging a further onslaught of FOIA litigation in this district. *See id.* at *5-6 (granting *Landis* stay and explaining that "forcing FDA to move . . . documents to the head of the line would encourage every well-heeled FOIA requester to litigate for a fast pass, all to the detriment of every other requester in the queue"). Plaintiff filed eleven lawsuits regarding CBER records within the first five months of 2025 alone, including this one. *See supra* n.7; Burk Decl. ¶ 28.

Currently, as described in other motions for stay in FOIA cases involving FDA, CBER's disclosure office is unable to agree to a processing schedule because of the demands of the *PHMPT I* and *II* production orders and the FOIA requests that have been waiting in line in CBER's disclosure office's Complex Track longer than Plaintiff's requests. After an eighteen-month stay, CBER's disclosure office will be better situated to update the Court on its ability to process any responsive records in this case.

In sum, all three *Landis* factors weigh in favor of an eighteen-month stay of this case.

## III.   FDA Must Exercise Due Care in Its Processing of Potentially Responsive Records.

Lastly, FDA cannot take shortcuts or simply release records to relieve a backlog or complete processing of a particularly burdensome request. To the contrary, as the Supreme Court has emphasized, FOIA exemptions serve "important interests" and are "as much a part of FOIA's purposes and policies as the statute's disclosure requirement." *Argus Leader*, 588 U.S. at 439. Here, FDA must take the time and have the resources necessary to carefully process potentially responsive records and determine whether any FOIA exemptions apply. FDA may need to protect

19

privacy interests discussed in the records (i.e., withhold personal identifiable information). Further, FDA may need to protect proprietary information, such as trade secrets and confidential commercial information, under Exemption 4 that provides "private parties with sufficient assurances about the treatment of their proprietary information so they will cooperate in federal programs and supply the government with information vital to its work." *Id.* at 440. FDA—and the Court, now that Plaintiff's FOIA request has been brought before it—have responsibilities to, for example, patients and proprietary-information holders. A group of FOIA requestors, through the collective burden of their voluminous requests that could overwhelm an agency's FOIA processing capabilities, should not be able to subvert the FOIA exemptions' "important interests." *Id.*

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that this Court stay this case for eighteen months.

20

Dated: June 16, 2025
      Washington, D.C.


OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and
  Human Services
Chief Counsel for Food, Research, and
  Drugs

WENDY VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH NORFORD
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD  20993-0002

Respectfully submitted,

JEANINE FERRIS PIRRO
United States Attorney


By:*/s/ John C. Truong*
JOHN C. TRUONG
D.C. Bar # 465901
Assistant United States Attorney
601 D Street, NW
Washington, DC 20530
(202) 252-2524
John.Truong@usdoj.gov

*Attorneys for the United States of America*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| INFORMED CONSENT ACTION NETWORK,<br><br>      Plaintiff,<br><br>    v.<br><br>FOOD AND DRUG ADMINISTRATION, et al.,<br><br>      Defendants. | Civil Action No. 25-832 (TSC) |

## [PROPOSED] ORDER

UPON CONSIDERATION of Defendants' Motion for an Eighteen-Month Stay of Proceedings, any opposition thereto, and the entire record herein, it is hereby:

ORDERED that Defendants' motion is GRANTED;

ORDERED that this action is STAYED for eighteen months from the date of entry of this order; and it is further

ORDERED that Defendants will file a status report within two weeks after the end of the eighteen-month stay updating the Court on FDA's progress in complying with the production order in *Public Health & Medical Professionals for Transparency v. FDA*, Civ. A. No. 22-0915 (N.D. Tex.) and their proposal for further proceedings in this case.

SO ORDERED.

Dated:                                       _____
                                          United States District Judge