UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION NETWORK,

Plaintiff,

v.

FOOD AND DRUG ADMINISTRATION, et al.,

Defendants.

Civil Action No. 25-0832 (TSC)

**DEFENDANTS' REPLY IN SUPPORT OF THEIR
MOTION FOR AN EIGHTEEN-MONTH STAY OF PROCEEDINGS**

**TABLE OF CONTENTS**

ARGUMENT .......................................................................................................................... 2

I. An Eighteen-Month Stay Under 5 U.S.C. § 552(a)(6)(C)(i) is Warranted ................................... 2

   A.  The Court Has Authority to Grant a Stay Under 5 U.S.C. § 552(a)(6)(C)(i) ........................ 2

   B.  FDA Has Demonstrated "Exceptional Circumstances" and "Due Diligence" ...................... 9

II. In the Alternative, this Court Should Exercise Its Authority to Stay This Action Under Landis 19

   A.  A Stay Will Not Injure Plaintiff ........................................................................................ 19

   B.  FDA Has Demonstrated it Will Suffer Hardship Without a Stay ...................................... 19

   C.  A Judicial Stay Promotes the Orderly Course of Justice .................................................. 21

CONCLUSION ................................................................................................................... 22

## TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Appleton v. FDA*,
   254 F. Supp. 2d 6 (D.D.C. 2003) ............................................................................ 6

*Belize Soc. Dev. Ltd. v. Gov't of Belize*,
   668 F.3d 724 (D.C. Cir. 2012) ................................................................... 20, 19, 21

*Bower v. FDA,*
   Civ. A. No. 03-224, 2004 WL 2030277 (D. Me. Aug. 30, 2004) .............................. 4

*CareToLive v. FDA,*
   Civ. A. No. 08-005, 2008 WL 2201973 (S.D. Ohio May 22, 2008) ......................... 4

*Children's Health Def. v. CDC,*
   Civ. A. No. 23-0431 (TNM), 2024 WL 3521593 (D.D.C. July 24, 2024) ............... 22

*Cohen v. FBI*,
   831 F. Supp. 850 (S.D. Fla. 1993) ......................................................................... 6

*Democracy Forward Found. v. Dep't of Just.*,
   354 F. Supp. 3d 55 (D.D.C. 2018) ..................................................................... 6, 13

*Elec. Frontier Found. v. DOJ*,
   517 F. Supp. 2d 111 (D.D.C. 2007) ........................................................................ 5

*Elec. Frontier Found. v. DOJ*,
   563 F. Supp. 2d 188 (D.D.C. 2008) ........................................................................ 8

*Elec. Priv. Info. Ctr. v. Dep't of Just.,*
   Civ. A. No. 02-0063 (CKK), 2005 WL 6793645 (D.D.C. Aug. 31, 2005) ............... 7

*Energy Future Coal. v. Off. of Mgmt. & Budget*,
   200 F. Supp. 3d 154 (D.D.C. 2016) ................................................................... 6, 15

*Gilmore v. United States Dep't of Energy*,
   33 F. Supp. 2d 1184 (N.D. Cal. 1998) .................................................................... 7

*Gov't Accountability Project v. HHS*,
   568 F. Supp. 2d 55 (D.D.C. 2008) ............................................................ 6-7, 16, 17

*Landis v. North American Co.*,
   299 U.S. 248 (1936) ............................................................................................... 2

*Leadership Conference on Civil Rights v. Gonzales*,
   404 F. Supp. 2d 246 (D.D.C. 2005) ...................................................................... 13

*Open America v. Watergate Special Prosecution Force*
   ("Open America"), 547 F.2d 605 (D.C. Cir. 1976) ............................................. 1, 3, 6, 13

*Rabin v. U.S. Department of State*,
   980 F. Supp. 116 (E.D.N.Y. 1997) ......................................................................... 4

*Shapiro v. DOJ,*
    Civ. A. No. 12-313 (BAH), 2014 WL 12912625 (D.D.C. Dec. 8, 2014) ......................................................... 3-4

*Wilderness Soc'y. v. U.S. Dep't of Int.,*
    Civ. A. No. 04-0650 (CKK), 2005 WL 3276256 (D.D.C. Sept. 12, 2005) ......................................................... 5

## Statutes

5 U.S.C. § 552(a)(4)(B) ........................................................................................................................ 7

5 U.S.C. § 552(a)(6)(A) ........................................................................................................................ 13

5 U.S.C. § 552(a)(6)(C) ........................................................................................... 2, 9, 10, 11, 12, 14

5 U.S.C. § 552(a)(6)(C)(i) ......................................................................................................... 1, 2, 6, 7, 9

5 U.S.C. § 552(a)(6)(C)(ii) ........................................................................................................... 12, 13

section 552(a)(6) ........................................................................................................................ 4

section 552(a)(6)(C) ......................................................................................................................... 3, 8

Section 552(a)(6)(C)(i) .................................................................................................................... 13, 19

## Other

*H.R. Rep. No. 106–50, 106th Cong., 1st Sess.,*
    1999 WL 132731 (Mar. 11, 1999) ........................................................................................ 7, 8

supra ...................................................................................................... 17, 13, 15, 18, 19

Defendants the Food and Drug Administration ("FDA") and the Department of Health and Human Services, by and through undersigned counsel, respectfully submit this Reply in Support of their Motion for an Eighteen-Month Stay of Proceedings ("FDA Mot.," ECF No. 13). As explained in its motion, FDA is entitled to a stay under 5 U.S.C. § 552(a)(6)(C)(i) and *Open America v. Watergate Special Prosecution Force* ("*Open America*"), 547 F.2d 605 (D.C. Cir. 1976), because orders in two cases brought by Public Health and Medical Professionals for Transparency imposed on FDA an overwhelming and still ongoing workload that it could not have predicted, and FDA has been exercising due diligence in responding to those orders and the other substantial demands upon the agency. Plaintiff's response largely focuses on its belief that FDA should be able to process Plaintiff's FOIA request without delay regardless of the burdens FDA is under. Plaintiff is mistaken.

The issue here reduces to the simple question of whether FDA may receive a limited stay of this FOIA proceeding while CBER's[1] disclosure office continues to work at full capacity to meet the extraordinary court-ordered production deadline imposed upon it in *Public Health & Medical Professionals for Transparency v. FDA*, Civ. A. No. 22-0915 (MTP) (N.D. Tex.) ("*PHMPT II*") and continues to process Complex Track requests received ahead of Plaintiff's request. FDA moved for a stay because the out-of-circuit court orders in *PHMPT II* and in *Public Health & Medical Professionals for Transparency v. FDA*, Civ. A. No. 21-1058 (MTP) (N.D. Tex.) ("*PHMPT I*") have required it to produce a total of approximately 9.1 million pages of records at a pace that is unprecedented in the history of FDA and, to its knowledge, any agency. *See* Order, ECF No. 35, *PHMPT I* (Jan. 6, 2022); Mem. Op. & Order, ECF No. 101, *PHMPT I* (Dec. 6, 2024); Order, ECF No. 38, *PHMPT II* (June 12, 2023); Am. Order, ECF No. 52, *PHMPT*

---

[1] Defined terms used herein have the same meaning provided in FDA's Motion.

*II* (June 9, 2025); *see also* Burk Decl. (ECF No. 16), ¶¶ 7, 9-10, 33. As listed in FDA's Motion, the agency has sought, and obtained, similar motions for stays in FOIA litigation involving CBER records. *See* FDA Mot. at 14-15 n.2.

Plaintiff argues that the *PHMPT* orders are not "exceptional circumstances" under 5 U.S.C. § 552(a)(6)(C) because of FDA's overall budget and FOIA resources, as well as the predictable nature of FOIA work. But the unparalleled volume and production rate required by the *PHMPT* orders were an unpredictable and sharp increase from previous demands on CBER's resources and constitute "exceptional circumstances" that are not negated by other purportedly available funds.

Plaintiff's arguments that FDA cannot show due diligence under 5 U.S.C. § 552(a)(6)(C), either with respect to its specific request or FDA's processing of FOIA requests generally, also fall short. FDA's FOIA process, which places requests in one or more queues based on volume, complexity, or subject matter to be assigned to reviewers generally for processing on a first-in, first-out basis, *see* Burk Decl. ¶ 7, is sufficient to show "due diligence."

Plaintiff's arguments against a stay under *Landis v. North American Co.*, 299 U.S. 248 (1936), similarly fail. Again, Plaintiff ignores the unprecedented burdens that *PHMPT I* and *PHMPT II* placed, and *PHMPT II* continues to place, on CBER's (and FDA's) resources, and fails to articulate a harm that it might suffer from receiving records after a stay that would overcome the showing of harm that FDA would suffer without a stay.

## ARGUMENT

### I.      An Eighteen-Month Stay Under 5 U.S.C. § 552(a)(6)(C)(i) is Warranted

#### A.      The Court Has Authority to Grant a Stay Under 5 U.S.C. § 552(a)(6)(C)(i)

A stay in this case is permitted by 5 U.S.C. § 552(a)(6)(C) and *Open America*, as numerous courts, including this one, have already found. *See generally* FDA Mot. at 14-15 n.2. Yet Plaintiff

2

attempts to undercut these authorities by imploring the Court to ignore Congress' express intent and abandon longstanding precedent in this and other circuits. Plaintiff's Opposition ("Pl. Opp.," ECF No. 15) at 15-24.

### 1. *Open America* plainly applies here and has been applied by numerous judges in this court as well as in other circuits.

In *Open America*, 547 F.2d at 610, the government argued that "Congress intended for the courts to utilize the authority granted to them under [section 552(a)(6)(C)] to relieve agencies of the burden of complying with the very strict statutory time limitations in subsection (6)(A)." The D.C. Circuit agreed, noting that section 552(a)(6)(C):

> obviously contemplates (1) that the agency will have found it impossible to respond to a request within the time limits specified, even with all due diligence, . . . ; (2) that the requesting party will have gone to court; and (3) that the court will hear evidence (a) as to what "exceptional circumstances" may excuse the Government from the rigid time limits of [section 552(a)(6)], and (b) as to the "due diligence" of the agency, if that is challenged by plaintiff.

*Id.* at 610-12. Finding the government had met its burden, the Circuit Court held that "exceptional circumstances" may exist when an agency can show that it "is deluged with a volume of requests for information vastly in excess of that anticipated by Congress [and] when the existing resources are inadequate to deal with the volume of such requests within the time limits of subsection (6)(A)." *Id.* at 616; FDA Mot. at 10-11. Put another way, exceptional circumstances exist when an agency is overwhelmed by burdens related to information disclosure, at a level unanticipated by Congress, and lacks sufficient resources to manage those requests.

Since the Circuit Court's decision in 1976, *Open America* has been the controlling precedent in this circuit and persuasive precedent across other circuits when considering agency requests under section 552(a)(6)(C). *See, e.g.*, *Shapiro v. DOJ*, Civ. A. No. 12-313 (BAH), 2014 WL 12912625, at *2 (D.D.C. Dec. 8, 2014) (granting a 2-year stay after the FBI estimated it would

3

need to review 350,000 pages potentially responsive to the underlying FOIA request); *CareToLive v. FDA*, Civ. A. No. 08-005, 2008 WL 2201973, at *9 (S.D. Ohio May 22, 2008) (awarding stay where exceptional circumstances existed and agency was exercising due diligence in processing FOIA requests); *Bower v. FDA*, Civ. A. No. 03-224, 2004 WL 2030277, at *3 (D. Me. Aug. 30, 2004) (granting stay where FDA faced "enormous litigation demands" and demonstrated reasonable progress with its FOIA backlog); *Rabin v. U.S. Department of State*, 980 F. Supp. 116 (E.D.N.Y. 1997) (finding both "exceptional circumstances" and "due diligence" and granting a stay where the State Department was processing almost 2,000 pending requests on a first-in, first-out basis).

### 2. In adopting the 1996 Electronic FOIA amendments, Congress did not reject *Open America.*

Plaintiff argues that the majority decision in *Open America* "misread the statutory text, ignored Congress' purpose, and reversed FOIA's burden structure" imposed by section 552(a)(6). Pl. Opp. at 18. Relying on Judge Leventhal's concurrence, Plaintiff asserts that the majority's interpretation was "a clear departure from the very premise of [section 552(a)(6)]" and reversed the substantial burden on the government to justify any noncompliance with FOIA time limits. Pl. Opp. at 19 (citing *Open America* ,547 F.2d at 617 (Leventhal, J. concurring)). But Congress considered Judge Leventhal's concerns and took steps to adopt and clarify the court's holding on what constitutes exceptional circumstances when it enacted the 1996 Electronic FOIA Amendments ("1996 Amendments"). In fact, the legislative history demonstrates that the 1996 Amendments were not intended to "overturn" or "change the outcome in *Open America*." S. Rep. 104-272, 28-29. Nor was the Circuit Court's holding "repudiated," Pl. Opp. at 19.

Instead, "Congress, having considered the decision in *Open America*, intended the amendments to be 'consistent with the holding in *Open America*,' and sought only to 'clarify that

4

***routine, predictable agency backlogs*** for FOIA requests do not constitute exceptional circumstances.'" *Elec. Frontier Found. v. DOJ*, 517 F. Supp. 2d 111, 116-17 (D.D.C. 2007) (emphasis added) (quoting H.R. Rep. 104-795, at 24 (1996), reprinted in 1996 U.S.C.C.A.N. 3448, 3467). Congress determined that exceptional circumstances must be demonstrated by more than mere number or backlog of pending requests, *see* S. Rep. 104-272, at 28-29, and in particular,

> [a]gencies may make a showing of exceptional circumstances based on the amount of material classified, based on the size and complexity of other requests processed by the agency, based on the resources being devoted to the declassification of classified material of public interest, or based on the number of requests for records by courts or administrative tribunals.

H.R. Rep. No. 104-795, at 24-25; S. Rep. 104-272, at 28-29 (agencies may also show "the affirmative steps the agency is taking to reduce the backlog (such as applying for additional funding, training, or reassigning additional personnel, or implementing new processing procedures)"); *see also* S. Rep. 104-272, at 17 ("good faith efforts to address and reduce an unusually large backlog may be relevant to a determination of whether exceptional circumstances exist"); *Wilderness Soc'y. v. U.S. Dep't of Int.*, Civ. A. No. 04-0650 (CKK), 2005 WL 3276256, at *6 (D.D.C. Sept. 12, 2005) ("[T]he amendments clearly contemplate that other circumstances, such as an agency's efforts to reduce the number of pending requests, the amount of classified material, the size and complexity of other requests processed by the agency, the resources being devoted to the declassification of classified material of public interest, and the number of requests for records by courts or administrative tribunals, are relevant to the courts' determination as to whether exceptional circumstances exist.").

Absent any support, Plaintiff contends further that *Open America*'s first-in, first-out policy and multi-track queues "operate[] to nullify the express command of Congress." Pl. Opp. at 20. But Congress recognized *Open America*'s first-in, first out  and multi-track processing as a basis

for finding agencies have exercised due diligence, and even "encourage[d] agencies to implement multi-track processing systems for FOIA requests to reduce backlog." S. Rep. 104-272, at 17; H.R. Rep. No. 104-795, at 31 (amending the FOIA to "authorize agencies to implement a multi-track system for processing requests"). In line with Congress' intent, courts have routinely held that agencies act with due diligence when they process requests on a FIFO basis or using a multi-track queue system. FDA Mot. at 12 (citing *Appleton v. FDA*, 254 F. Supp. 2d 6, 10 (D.D.C. 2003); *Energy Future Coal. v. Off. of Mgmt. & Budget*, 200 F. Supp. 3d 154, 162 (D.D.C. 2016); *Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 61-63 (D.D.C. 2018)).

Finally, Plaintiff asserts that FOIA "requires diligence in responding to **the** request . . . not to the agency's queue or other requesters." Pl. Opp. at 20 (emphasis in original) (citing 5 U.S.C. § 552(a)(6)(C)(i)). Plaintiff's argument suggests that FDA must ignore all the preceding requests in favor of processing Plaintiff's first. However, courts, including in *Open America*, have routinely rejected the notion that the mere filing of a lawsuit, absent a showing of "exceptional need or urgency," should expedite processing of a FOIA request. *See* 547 F.2d at 616; *Cohen v. FBI*, 831 F. Supp. 850, 854 (S.D. Fla. 1993) ("[L]ittle progress would result from allowing FOIA requesters to move to the head of the line by filing a lawsuit. This would do nothing to eliminate the FOIA backlog; it would merely add to the judiciary's backlog."). Moreover, Plaintiff fails to identify any post-*Open America* case where a court has refused to find due diligence merely because an agency has not yet responded to the request at issue, or because an agency has implemented a FIFO, multi-track system. *See* Pl. Opp. at 21 (citing *Hayden v. Dep't of Just.*, 413 F. Supp. 1285 (D.D.C. 1976) (one of two district court matters decided shortly before the Circuit Court decision in *Open America* and before Congress amended the FOIA to redefine exceptional circumstances and incorporate FIFO/multi-track processing system)); *Gov't Accountability Project v. HHS*, 568 F.

6

Supp. 2d 55 (D.D.C. 2008) (finding a lack of due diligence, in part, by the government's delay in moving for a stay almost five months after answering it would do so and only after plaintiff filed a motion for judgment on the pleadings); *Gilmore v. United States Dep't of Energy*, 33 F. Supp. 2d 1184 (N.D. Cal. 1998)) (assessing whether an agency's failure to make a timely determination on records disclosure constituted an improper withholding under FOIA, not whether a stay under 552(a)(6)(C)(i) is warranted). In any event, Plaintiff's argument fails because "diligence" can only be assessed in the context of the agency's overall workload, which necessarily accounts for other requests.

### 3. This Court has ample discretion to decide whether a stay is appropriate in any FOIA case.

Under 5 U.S.C. § 552(a)(4)(B), Congress vested U.S. District Courts with exclusive jurisdiction over FOIA matters. Such jurisdiction includes permitting agencies additional time to respond to requests when unprecedented workload obligations necessitate greater time. 5 U.S.C. § 552(a)(6)(C)(i); *Elec. Priv. Info. Ctr. v. Dep't of Just.*, Civ. A. No. 02-0063 (CKK), 2005 WL 6793645, at *3 (D.D.C. Aug. 31, 2005) ("FOIA explicitly contemplates the possibility of a stay of judicial proceedings at the district court level."); *see also* EFOIA Report, at *23, H.R. Rep. No. 106–50, 106th Cong., 1st Sess., 1999 WL 132731, at *14 (Mar. 11, 1999) (recognizing the Court's authority under FOIA, including the 1996 Amendments, to "extend statutory time limits for any agency [response] to a FOIA request," and further explaining the factors for considering whether exceptional circumstances exists).

Plaintiff argues that, under FOIA, the court's authority is limited to allowing an agency more time to complete record review that is already underway. *See* Pl. Opp. at 16, 32. But Plaintiff's view is at odds with the plain meaning of the statutory text and with the legislative history of FOIA. Plaintiff cites nothing for its bald assertion that "[a]dditional time to 'complete'

a review means it must have already commenced." *Id.* at 32. Nor could it. Nothing in the text of section 552(a)(6)(C) supports Plaintiff's extra-textual view that a court may only allow an agency additional time if it has already commenced its review of potentially responsive records. Indeed, courts have found the opposite: that an agency can demonstrate due diligence even if processing has not yet begun. *See, e.g.*, *Elec. Frontier Found. v. DOJ*, 563 F. Supp. 2d 188, 194-95 (D.D.C. 2008) (finding the government had exercised due diligence even though "processing [was] scheduled to commence after the completion of several earlier-filed requests" in the agency's "large queue" category). Plaintiff's view would require that an agency simultaneously search for and review potentially responsive records for every FOIA request subject to litigation to demonstrate due diligence as to each request. To the contrary, the legislative history indicates that Congress understood agencies would process requests in a queue, *i.e.*, sequentially. *See* H.R. Rep. No. 104-795, at 23 (clarifying that agencies should show due diligence within each track of a multi-track processing system).

Plaintiff further argues that *Open America* has transformed "delay into a defense and litigation into a license for further postponement." Pl. Opp. at 23. But, as already acknowledged by many courts in this District, "to some extent, this is a problem of Plaintiff's own design." FDA Mot. at 20 (citing Order, *ICAN v. FDA*, Civ. A. No. 24-3675 (JMC) (Apr. 10, 2025), ECF No. 2). As discussed below, *see infra* pp. 17-18, Plaintiff, by and through its counsel, has submitted at least 350 FOIA requests since 2019 requiring review of CBER records. FDA Mot. at 8, 19. Moreover, despite the numerous stays entered by courts in this District for FDA, Plaintiff continues to initiate legal proceedings to force CBER's prioritization of Plaintiff's requests ahead of hundreds of other requestors. *See* FDA Mot. at 13 (discussing Plaintiff's eleven new complaints filed in March and May 2025). Plaintiff continued attempts to monopolize CBER's resources and

8

prioritize Plaintiff's requests, at the expense of fairness to other FOIA requesters, leaves the agency with little choice but to seek a stay.

The statute and Congress's intent are clear: exceptional, unforeseen workloads, such as those FDA faces in *PHMPT I* and *II* as described *infra*, warrant additional time to respond to requests under FOIA, *see* S. Rep. 104-272, at 28-29, and this Court has ample discretion to decide whether a stay is appropriate in any FOIA case before it. 5 U.S.C. § 552(a)(6)(C)(i).

**B.    FDA Has Demonstrated "Exceptional Circumstances" and "Due Diligence"**

This Court should grant FDA's requested stay under 5 U.S.C. § 552(a)(6)(C)(i) because FDA has shown: (1) "exceptional circumstances," based on unprecedented court orders requiring extraordinary productions in *PHMPT I* and *PHMPT II* while also handling increased FOIA litigation and other FOIA requests amidst the inevitable adverse impact on the backlog since the first *PHMPT I* order; and (2) "due diligence," based on the remarkable efforts CBER's disclosure office has undertaken to comply with *PHMPT* court orders and other FOIA obligations, including hiring and training new staff and contractors, and reorganizing and triaging staff resources. As explained below, Plaintiff's arguments in opposition are deeply flawed.

**1.    Exceptional circumstances exist warranting an eighteen-month stay.**

If the extraordinary processing and production schedules ordered by the court in *PHMPT I* and *II* do not qualify as "exceptional circumstances" under 5 U.S.C. § 552(a)(6)(C) and *Open America*, then the exception is meaningless. As FDA has previously explained, the processing and production rates ordered in *PHMPT I* and *PHMPT II* are, to FDA's knowledge, "many orders of magnitude greater than anything any agency has ever encountered in a FOIA order." Burk Decl. ¶ 35. CBER's disclosure office has produced, and continues to process and produce, COVID-19

vaccine records at an extraordinary and unsustainable rate to comply with court orders in two cases filed roughly one year apart by PHMPT, an organization that is represented by the same counsel as Plaintiff in this case. CBER's disclosure office produced at least 90,000 to 110,000 pages per month from July 2023 through November 2023 to meet the demands of *PHMPT I* and *II*. *See* Burk Decl. ¶ 8. Beginning in December 2023, in *PHMPT II*, FDA was ordered to produce *at least* 180,000 pages per month, a rate which will continue until October 1, 2026. *See* Burk Decl. ¶¶ 8, 10. At times, the monthly rate of production has exceeded 230,000 pages to comply with the deadlines in the two *PHMPT* cases. Burk Decl. ¶ 8. These productions will reach over 9 million pages of COVID-19 vaccine records—carefully reviewed and processed by FDA staff—by October 1, 2026. *See* Order, ECF No. 35, *PHMPT I* (Jan. 6, 2022); Mem. Op. & Order, ECF No. 101, *PHMPT I* (Dec. 6, 2024); Order, ECF No. 38, *PHMPT II* (June 12, 2023); Am. Order, ECF No. 52, *PHMPT II* (June 9, 2025); *see also* Burk Decl. ¶ 10. By any measure, those page counts and rates of production are staggering.

Put simply, the FOIA processing and production schedules required by the *PHMPT* cases constitute exceptional circumstances. The *PHMPT I* court called its own order "unprecedented." Transcript of Hearing, ECF No. 58 at 9:19–24, *Pub. Health & Med. Pros. for Transparency v. FDA*, Civ. A. No. 21-1058 (N.D. Tex. Feb. 7, 2022). Indeed, the term "exceptional" seems modest when considering the *PHMPT* document processing and production schedules against the backdrop of relentless FOIA lawsuits—many of which have been brought by Plaintiff's counsel—coupled with the increasing number of complex FOIA requests and unforeseeable staff reductions.

From fiscal years 2015 to 2018, CBER's FOIA office received an average of 289 requests per year. *See* Burk Decl. ¶ 26. Only one FOIA lawsuit was filed during that timeframe. *Id.* Since fiscal year 2019 to date, there have been more than 50 FOIA lawsuits filed seeking records

maintained by CBER. *Id.* ¶ 28. ICAN is plaintiff in approximately twenty-five of the thirty-six lawsuits currently pending.[2] *Id.* ¶ 29. CBER's disclosure office received 391 FOIA requests in 2019 and 399 requests in 2020. *Id.* ¶ 27. Thereafter, in fiscal years 2021-2024, CBER disclosure's office received an average of 529 FOIA requests per year. *Id.* This increase was unpredictable by its very nature, as it starkly departed from the prior baseline. Moreover, since 2019, Plaintiff itself has submitted more than 350 FOIA requests seeking CBER records or requiring CBER review.[3] *Id.* ¶ 29. Despite sharp increases in FOIA requests and FOIA litigation, CBER's disclosure office was able to keep its FOIA queues relatively stable before the 2022 production order in *PHMPT I.* *Id.* Since then, the CBER disclosure office has been handed unpredictable and unyielding rounds of "whac-a-mole" as it works to comply with the *PHMPT* orders and, if resources permit, process pending FOIA requests, all while experiencing an increase in incoming FOIA requests and FOIA litigation. *Id.* ¶¶ 26-30.

Although these figures standing alone are exceptional by any measure, the burden here is more fully understood when considering the major resource limitations of CBER's disclosure office. CBER's disclosure office increased the number of staff and contractors starting in 2022 in response to the vast and unpredictable workload created by the *PHMPT* orders. *See* FDA Mot. at 20. Hiring and onboarding of new employees is a significant step, but it is only the beginning. It

---

[2] On July 29, 2025, during the pendency of this briefing, Plaintiff filed two additional lawsuits against FDA seeking records maintained by CBER and one of which is assigned to this Court. *See Informed Consent Action Network v. FDA*, Civ. A. No. 25-2456 (TSC) (D.D.C.); *see also Informed Consent Action Network v. FDA*, Civ. A. No. 25-2457 (JEB) (D.D.C.).

[3] The datasets submitted by Plaintiff are consistent with Defendants' data. Plaintiff provides a list of FOIA requests purporting to show a portion of requests it considers to be "pending," not the number of total requests submitted to FDA since 2019 requiring review by CBER's disclosure office. *See* Pl. Opp., Declaration of Annalise Beube at ¶ 8 and Ex. A. Defendants' list includes all FOIA requests requiring review of records by CBER's disclosure staff, including those that are in litigation and/or are closed.

takes time and resources to train new employees to review sensitive, highly technical records. *See* FDA Mot. at 20. Despite the staffing gains that were made, FDA has experienced higher than normal attrition in 2025. Within this calendar year alone, FDA has lost 30% of its FOIA staff agency-wide, most of whom were senior-level employees, including five in CBER's disclosure office. *See* Ex. A hereto (Declaration of Meredith Schlaifer ("Schlaifer Decl.") ¶ 13), Burk Decl. ¶ 35. Since January 2025, FDA has been unable to replace these positions due to an on-going hiring freeze. Schlaifer Decl. ¶ 7. Plaintiff makes the baseless assertion that FDA has a "$3.6 billion discretionary budget . . . and 168 full-time FOIA staff" to suggest that FDA can divert the entirety of these supposed resources to CBER's disclosure office. Pl. Opp. at 27. Even assuming the accuracy of the budget figure, such funds would be intended for FDA's critical needs across the entire agency, not for siphoning to respond to Plaintiff's unrelenting FOIA requests and litigation. *See* Schlaifer Decl. ¶ 14. FOIA is an unfunded mandate—that is, it is not a separate "line item" category in legislative appropriations for the agency and, thus, FOIA operations must be funded from general budgetary appropriations. *Id.*

As described above, CBER's current FOIA workload was unpredictable, because it resulted from an unprecedented series of court orders and a sudden surge in the volume of requests that marked a significant departure from the prior status quo. To qualify for a stay, FDA need not show more. Under section 5 U.S.C. § 552(a)(6)(C)(ii), "'exceptional circumstances' does not include a delay that results from a predictable agency workload of requests under this section, *unless* the agency demonstrates reasonable progress in reducing its backlog of pending requests." (emphasis added). CBER's disclosure office has been ordered to process and produce over 9 million records in a four-year period. During this time, the number of FOIA requests received by that same office reached an all-time high of 633 requests in one fiscal year while FOIA litigation

12

climbed. *See* Burk Decl. ¶ 27. This is, without question, the very type of "deluge[]" of information requests that Congress anticipated would require agencies to be excepted from compliance with "the very strict statutory time limitations in [5 U.S.C. § 552(a)(6)(A)]." *See Open America,* 547 F.2d at 610, 616; *see also* FDA Mot. at 10-11. And despite hiring and training additional staff and contractors to help address this exceptional and unpredictable workload, FDA and CBER's disclosure office have recently lost significant staff that cannot be replaced due to the hiring freeze. *See* Schlaifer Decl. ¶¶ 7, 13. In multiple other cases, courts have agreed that these circumstances meet the standard for a stay. *See* FDA Mot. at 14-15 and n.2.

Plaintiff argues that FDA must show "more than a high volume of requests—they must show that the volume was **truly unforeseeable** and that they are making measurable progress in clearing any backlog." Pl. Opp. at 25 (bold in original). Plaintiff attributes this standard to *Leadership Conference on Civil Rights v. Gonzales,* 404 F. Supp. 2d 246 (D.D.C. 2005). As an initial matter, there is no such standard articulated in *Leadership.* Moreover, there are no facts discussed by the court in *Leadership* to support Plaintiff's assertion that the "facts in [*Leadership*] are very comparable to the case at bar." Pl. Op. at 24 (emphasis added). The court called the backlog "predictable." Without a showing of diligent effort to reduce the "predictable" backlog, the *Open America* stay was denied.

Unlike the defendants in *Leadership*, FDA has established "exceptional circumstances" far beyond a backlog of FOIA requests. *See supra,* at Sec. I. A. 1. Moreover, FDA has shown "due diligence" under Section 552(a)(6)(C)(i); thus, FDA does not need to demonstrate a reduction in its FOIA backlog. *See* 5 U.S.C. § 552(a)(6)(C)(ii); *see also Democracy Forward Found. v. Dep't of Just.*, 354 F. Supp. 3d 55, 60 (D.D.C. 2018)).

Plaintiff argues that the "[*PHMPT*] orders are not so burdensome after all" and that the

"*PHMPT* cases are proof that FDA is capable of scaling up" in response to a court order. Pl. Opp. at 27. Plaintiff is thus again asking this Court to sanction Plaintiff's self-created problem by allowing it to jump the queue and jeopardize FDA's ability to comply with the existing court order in Plaintiff's case, along with otherwise working through its FOIA obligations. Although Plaintiff argues that "[t]he circumstances FDA faces are neither exceptional nor unforeseen but instead reflect the predictable consequences of its own decisions," courts in this District have disagreed. *See* Pl. Opp. at 24. In granting a stay extension in April 2025 in another FOIA case brought by Plaintiff, Judge Jia Cobb stated, "the Court also recognizes that, to some extent, this is a problem of Plaintiff's own design . . . [a]nd regardless, the Court cannot ask the agency to do the impossible. The agency has demonstrated that it is continuing to exercise due diligence despite (increasingly) exceptional circumstances. The Court can ask no more." Order at 2, *ICAN* v. FDA, Civ. A. No. 23-3675 (JMC) (D.D.C. Apr. 10, 2025), ECF No. 25 (cleaned up); *see also* Order at 3, *ICAN v. FDA*, Civ. A. No. 24-1906 (CRC) (D.D.C. Apr. 10, 2025), ECF No. 21 (entering six-month stay, noting that the "enormous workload" in *PHMPT I* and *II* "has given Defendants little choice but to put other FOIA requests on the backburner"). There is nothing predictable about the impact the *PHMPT* orders, FOIA litigation, and resource constraints have had on each FOIA request to be processed by CBER.

### 2. FDA has exercised "due diligence."

Plaintiff's arguments that FDA cannot show due diligence under 5 U.S.C. § 552(a)(6)(C), either with respect to Plaintiff's specific request or FDA's processing of FOIA requests generally, also fail. Similarly unavailing is Plaintiff's allegation that FDA is strategically delaying the processing of FOIA requests.

As described in the Burk Declaration, CBER's disclosure office has maintained a multi-

14

track process for handling FOIA requests, whereby requests are placed in queues based on volume, complexity, and/or subject matter, and requests in each queue are generally assigned to reviewers for processing on a first-in, first-out basis. Burk Decl. ¶¶ 17-18. As Plaintiff acknowledges, an agency's first-in, first-out policy, implementation of multi-track processing, and general efforts in improving FOIA processing, are sufficient to show due diligence under *Open America. Compare* FDA Mot. at 20 (citing *Energy Future Coal. v. OMB*, 200 F. Supp. 3d 154, 162 (D.D.C. 2016) (finding "due diligence" based on a "multi-track" processing system separating "simple" and "complex" requests)) *with* Pl. Opp. at 20 ("*Open America* set the stage for every agency to satisfy easily the demanding 'due diligence' prong simply by having a 'queue' system of first-in, first-out'"). But then, after taking issue with *Open America*, *see* Pl. Opp. at 18, *supra* Sec. I. A. 2, Plaintiff argues that FDA is not exercising due diligence with respect to its FOIA request in particular or with respect to FOIA requests submitted to FDA in general. *See* Pl. Opp. at 30-32. Plaintiff is wrong. Beyond its multi-track process, FDA's extraordinary efforts to comply with the court-ordered productions in *PHMPT I* and *II* while continuing work on other FOIA requests far exceed what is necessary to show due diligence.

FDA has not ignored the specific request at issue here. *See* Pl. Opp. at 30. To the contrary, CBER's disclosure staff reviewed Plaintiff's FOIA request to identify the appropriate queue placement, determined the request should be placed in the Complex Track because it required more processing time than requests in other queues, and evaluated Plaintiff's request with FDA counsel to determine whether a motion for stay was necessary. FDA Mot. at 9; Burk Decl. ¶ 37, 39-41; *see also* Burk Decl. ¶ 17 (describing FOIA queues). CBER's disclosure office's preliminary analysis to determine appropriate queue placement constitutes a review of Plaintiff's FOIA request. *See supra*, Sec. I.B.1.

These facts are also sufficient to distinguish the present case from *Gov't Accountability Project v. HHS* ("*GAP*"), 568 F. Supp. 2d 55 (D.D.C. 2008), upon which Plaintiff relies, *see* Pl. Opp. at 30-31.  In *GAP*, no information about a processing timeline was provided and there was an unexplained months-long delay in seeking an *Open America* stay. *Id.* at 63 (finding due diligence was not shown with respect to the plaintiff's FOIA request in part because FDA represented in its answer that it would seek a stay but did not do so until after the plaintiff moved for judgment on the pleadings). And most notably, the court in *GAP* did not order immediate processing of that plaintiff's FOIA request. So too here: if the stay is granted, Plaintiff's FOIA request will retain its place in the Complex queue, Burk Decl. ¶ 43, and CBER's disclosure office will process it to the extent that resources allow. *See* Burk Decl. ¶¶ 18, 24; Schlaifer Decl. ¶¶ 10-13 (describing limitations to FDA FOIA resources). By continuing to assign requests in this queue for processing on a generally first-in, first-out basis, working on requests in that queue as much as it can while balancing its enormous court-ordered production workload, and planning to process Plaintiff's request as soon as it comes up in the queue, FDA has shown due diligence with respect to Plaintiff's request. FDA Mot. at 21-23 (describing in detail CBER's large-scale changes to its disclosure staff and its disclosure staff's work processes and substantial monetary resources dedicated to those efforts); Burk Decl. ¶¶ 32, 34-36.

With respect to FDA's processing of FOIA requests generally, FDA's efforts to add to and maximize resources of CBER's disclosure office, such as hiring and training new employees and contractors since the *PHMPT I* production order was issued, go far beyond what is needed to demonstrate due diligence. *See* Burk Decl. ¶¶ 32, 35-36; Schlaifer Decl. ¶¶ 7, 14-15. However, FDA's decentralized nature limits the agency's ability to reallocate resources to assist CBER's disclosure office to reduce its backlog. Schlaifer Decl. ¶¶ 8-13. FDA cannot reallocate staff from

its non-CBER FOIA components because each disclosure office has its own specialized responsibilities based on the specific types of records that office is trained to review. *Id.* ¶ 6. Moreover, like CBER's disclosure office, these other FOIA components are also over-extended by existing disclosure obligations, *id.* ¶¶ 11-12, and an agency-wide increase in complex FOIA requests and subsequent litigation, *id.* ¶¶ 9-10. FDA's resources are further limited due to diminished FOIA staff and the current hiring freeze. *Compare id.* ¶ 7 (explaining that "FDA cannot reallocate resources to CBER's FOIA office from other important agency functions or components as a means to address CBER's workload"), *with* Pl. Opp. at 20 (asserting that FDA's "claimed incapacity rests not on scarcity but on internal allocation choices"); *see also* Burk Decl. ¶¶ 26-28; FDA Mot. at 12-13 (detailing the rising number of CBER-specific FOIA requests and lawsuits adding to the workload of CBER's disclosure office).

The backlog of FOIA requests in CBER's disclosure office, therefore, is not an indication of the failure of FDA's multi-track queue process, Pl. Opp. at 31-32, nor does it show that FDA is strategically delaying FOIA requests to defer accountability, *id.* at 33-34. Rather, the submission of at least 350 FOIA requests by Plaintiff requiring review of CBER records since 2019 and the approximately twenty-five open FOIA suits brought by Plaintiff,[4] seven of which were filed between March 19 and 20, 2025, are indicative of the overwhelming burdens CBER has faced since the emergence of COVID-19. *See* FDA Mot. at 8, 18-19; Burk Decl. ¶ 28. They are also indicative of Plaintiff's outsized consumption of the resources of CBER's disclosure staff, *see* Burk Decl. ¶ 29, and appear to be an effort to push Plaintiff's FOIA request to the front of the processing queue at the expense of fairness to all requesters.

---

[4] *See supra* Sec. I.B.1 n. 2 (explaining that on July 29, 2025, Plaintiff filed two lawsuits against FDA seeking CBER-maintained records).

Most importantly, it is Plaintiff's counsel, Siri & Glimstad, who requested the very monopolization of CBER's disclosure office's available resources in *PHMPT I* and *II*. As detailed above, *see supra* Sec. I.B.1, CBER's disclosure office has had to increasingly devote the majority of its resources to processing the court-ordered productions in *PHMPT I* and *PHMPT II*, leading to the aforementioned efforts to hire and train additional staff. *See* Burk Decl. ¶¶ 7-10, 35. Moreover, CBER's disclosure office's ability to process at least 180,000 pages per month, and at times, in excess of 230,000 pages per month, Burk Decl. ¶ 33, since December 2023 reflects not, as Plaintiff claims, a strategy to defer accountability, but rather illustrates the resources necessary to comply with the unprecedented court orders at the expense of processing other FOIA requests. Likewise, FDA's court-ordered production of an additional 600,000 pages of records in *PHMPT I* between January and June 2025 represents ongoing herculean efforts by CBER's disclosure office to comply with tight production deadlines, not a scheme to conceal its true ability to process records.[5] Indeed, Plaintiff's counsel here is counsel for plaintiffs in the vast majority of the current FOIA litigation related to records processed by CBER's disclosure office, and CBER's disclosure office has received hundreds of FOIA requests from 2019 to date from plaintiff's counsel directly or entities that they represent. Burk Decl. at ¶ 11. Under these circumstances, Plaintiff's accusations that FDA has schemed to delay the processing of its FOIA requests or to falsely claim exceptional circumstances are particularly unwarranted. As discussed above, FDA is not violating

---

[5] Similarly, Plaintiff wrongly suggests that FDA must have resources to spare because it was able to post 153 pages of COVID-19 vaccine-related information on its website in January 2025. Those records were responsive to a few FOIA requests, including one at issue in *Informed Consent Action Network v. FDA*, No. 1:23-cv-00219-RBW (D.D.C. 2023). *See* Pl. Opp. at 34-35; *see also* COVID-19 Vaccine Safety Surveillance | FDA (discussing passive surveillance); Biologics Electronic Reading Room | FDA (containing link to empirical Bayesian data-mining records). To be posted, these records did not consume search time (they had been collected previously) or redaction time (they were released in full); therefore, the CBER disclosure office's FOIA reviewers were not involved.

FOIA, but Plaintiff (and its counsel) is straining the agency's limited capacity while it labors to comply with the *PHMPT II* order. *See supra* Sec. I.B. (discussing exceptional circumstances); Burk Decl. ¶¶ 24, 30, 32-33, 42-43.

Plaintiff's arguments thus fail to undermine FDA's showing of the "due diligence" needed for a stay under Section 552(a)(6)(C)(i). *See* FDA Mot. at 20-23.

## II.     In the Alternative, this Court Should Exercise Its Authority to Stay This Action Under Landis

Plaintiff's arguments against a *Landis* stay are insufficient to overcome FDA's showing that a stay is warranted here. A *Landis* stay is appropriate when the movant's need "overrides the injury to the party being stayed." *Belize Soc. Dev. Ltd. v. Gov't of Belize*, 668 F.3d 724, 732 (D.C. Cir. 2012) (internal quotation marks omitted). FDA has demonstrated that it will suffer serious hardship absent a stay, and a stay will not harm Plaintiff. *See* FDA Mot. at 23-24. A stay also reduces the need for judicial oversight at a time when FDA cannot agree to a production schedule, thereby promoting judicial economy. FDA Mot. at 25.

### A.     A Stay Will Not Injure Plaintiff

Plaintiff has not articulated a specific need or urgency for these records sufficient to demonstrate it will be harmed if the Court grants a stay under *Landis*. Instead, Plaintiff has offered conclusory assertions that these records are of "continuing public consequence" or "urgent matters of public health." Pl. Opp. at 37-38. Plaintiff's generalized assertions are insufficient to show Plaintiff will be harmed if a stay is granted. *See* FDA Mot. at 24-25. Immediate access to the information Plaintiff seeks will not supplant or add value to the voluminous information that FDA has made available to the public, nor is such immediate access feasible given the current resource constraints facing CBER's disclosure office.

### B.     FDA Has Demonstrated it Will Suffer Hardship Without a Stay

19

Plaintiff argues FDA has not shown that it will suffer serious hardship absent a stay because FDA "simply cites its obligations in other litigations—particularly the *PHMPT* cases" and has not "provide[d] . . . evidence that complying with FOIA in this case would uniquely prejudice the agency." [6] Pl. Opp. at 39. However, FDA's hardship is not in defending this suit but, rather, in responding to Plaintiff's FOIA request while CBER's disclosure office is occupied with processing *PHMPT II* records and assigning any remaining resources to requests earlier in the queue. Burk Decl. ¶¶ 34-36.

Further, Plaintiff claims FDA's "burdens are largely self-inflicted and already satisfied." Pl. Opp. at 39. Although FDA completed the June 2025 production in *PHMPT I*, that did not conclude the extraordinary burdens imposed by the *PHMPT I* and *PHMPT II* orders on CBER's disclosure office. The end of *PHMPT I* coincided with an increase in CBER's disclosure workload, as the *PHMPT II* production increased to at least 180,000 pages per month (and at least 230,000 pages per month on average to meet the court's June 30, 2025, deadline). Burk Decl. ¶ 8. Additionally, in December 2024, the court considered whether emergency use authorization files were within the scope of the FOIA request and after concluding those files were within the scope, the court ordered FDA to produce the emergency use authorization file in *PHMPT I* by June 30, 2025. *Compare* Mem. Op. & Order at 6 and 8, *PHMPT I*, Civ. A. No. 21-1058, ECF No. 101 (Dec. 6, 2024) (containing no assertion that FDA knowingly concealed of missing records, rather only

---

[6] Plaintiff's implication regarding the overall size of FDA's FOIA staff, *see* Pl. Opp. at 39, is irrelevant, given that FOIA staff from other FDA centers are generally not interchangeable with CBER FOIA disclosure staff. *See* Schlaifer Decl. ¶ 17 (explaining that each center has their own disclosure regulations in addition to FDA's disclosure regulations); *id.* ¶ 16 ("[P]erforming disclosure reviews is a specialized skill that requires training and expertise that the vast majority of FDA staff does not have"); *see also* Burk Decl. ¶ 35-36 (describing the required training and duration). Moreover, Plaintiff's assertion regarding FDA's budget, *see* Pl. Opp. at 39, is unfounded as "FOIA operations must be funded from general budgetary appropriations." Schlaifer Decl. ¶ 14 (explaining the funding of FOIA operations within FDA).

the conclusion that "the EUA is disclosable data as requested by Plaintiff" and "responsive to Plaintiff's FOIA request"), *with* Pl. Opp. at 26 (asserting the court found that "FDA had known of the missing records and concealed them"). FDA completed production of approximately 600,000 additional pages in *PHMPT I* by June 30, 2025. *See* Mem. Op. & Order (Dec. 6, 2024), ECF No. 101; *see also* Burk Decl. ¶ 9. On May 15, 2025, the Court ordered the EUA files in *PHMPT II* to be produced by October 1, 2026, again at a minimum monthly rate of 180,000 pages per month. Burk Decl. ¶¶ 7-10.

Contrary to Plaintiff's suggestion, FDA's obligations are not "self-inflicted." Pl. Opp. at 39. These obligations stem from two unprecedented court orders requiring production of nearly 9.1 million pages of records and an overall increase in FOIA litigation and requests. Burk Decl. ¶¶ 8, 10; *id.* ¶¶ 26-30 (describing the increase in FOIA litigation and the resources needed to manage the FOIA backlog). Without any relief in the next eighteen months, FDA will suffer serious hardship as CBER may be unable to conduct the necessary line-by-line review of all records and may be at risk of violating the *PHMPT II* order, which would open the agency to the threat of sanctions. *See* Burk Decl. ¶ 13. CBER's disclosure office does not have any extra resources to spare at this time, and that is why it is seeking a stay. After the expiration of an eighteen-month stay, CBER's disclosure office will be better situated to update the Court on its ability to process any responsive records in this case.

### C.    A Judicial Stay Promotes the Orderly Course of Justice

Although Plaintiff asserts that "a stay would complicate proceedings by fostering piecemeal litigation and serial extension requests," Pl. Mot. at 40, Plaintiff is incorrect. First, a stay reduces the need for judicial oversight at a time when FDA lacks the resources to search for, review, and release responsive records and is unable to agree to a production schedule. Second, a

stay promotes judicial economy because it will discourage a further onslaught of FOIA litigation in this district. *See Children's Health Def. v. CDC*, Civ. A. No. 23-0431 (TNM), 2024 WL 3521593, at \*6 (D.D.C. July 24, 2024) (granting a *Landis* stay and noting that forcing FDA to move "documents to the head of the line would encourage every well-heeled FOIA requester to litigate for a fast pass, all to the detriment of every other requester in the queue").

Accordingly, this Court should exercise its authority to stay this action under *Landis*.

## CONCLUSION

For the foregoing reasons and those in Defendants' Motion, Defendants respectfully request that this Court stay this case for eighteen months.


Dated: August 4, 2025                       Respectfully submitted,
        Washington, DC
                                            JEANINE FERRIS PIRRO
                                            United States Attorney


                                            By: _____ */s/ John C. Truong* _____
                                               JOHN C. TRUONG, D.C. Bar # 465901
                                               Assistant United States Attorney
                                               601 D Street, NW
                                               Washington, DC 20530
                                               (202) 252-2524
                                               John.Truong@usdoj.gov

                                            *Attorneys for the United States of America*

22

OF COUNSEL:

SEAN R. KEVENEY
Acting General Counsel

ROBERT FOSTER
Deputy General Counsel
U.S. Department of Health and
  Human Services
Chief Counsel for Food, Research, and
  Drugs

WENDY VICENTE
Deputy Chief Counsel, Litigation

ELIZABETH NORFORD
Associate Chief Counsel
Office of the Chief Counsel
U.S. Food and Drug Administration
10903 New Hampshire Ave.
White Oak 31
Silver Spring, MD 20993

23

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

INFORMED CONSENT ACTION
NETWORK,

*Plaintiff*,

v.

FOOD AND DRUG ADMINISTRATION, *et al*.,

*Defendants*.

Civil Action No. 25-0832 (TSC)

## DECLARATION OF MEREDITH J. SCHLAIFER

I, Meredith J. Schlaifer, declare as follows:

1. I am the Deputy Director of the Division of Headquarters Freedom of Information ("DHFOI"), Office of Management and Enterprise Services, Office of the Commissioner, Food and Drug Administration ("FDA" or "the agency"), United States Department of Health and Human Services, in Rockville, Maryland.

2. I have held the position of Deputy Director of DHFOI and its predecessor, the Division of Freedom of Information, (hereafter referred to as the "Division") since January 2025. The previous Director departed in April 2025, and I am currently leading the Division in the absence of an official director.

3. As Deputy Director, I have had supervisory authority over the Division, which serves as FDA's official point for receiving all requests for records under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. *See* 21 C.F.R. § 20.40. In addition, the Division is responsible for reporting FDA's FOIA data to the Department of Health and Human Services and the Department of Justice, consulting with other federal agencies regarding FOIA requests,

1

conducting agency-wide FOIA training, and determining whether to grant requests for expedited processing, among other functions. The Division also processes requests for FDA's Office of the Commissioner and certain simple requests, such as requests for previously released records. The majority of FOIA requests (approximately 75 percent) are processed by the FOIA reviewers within FDA's other components.

4.      As part of my duties, I assign FOIA requests that relate, for example, to vaccines, to the appropriate center for processing. Due to the nature of my official duties, I am familiar with the procedures followed by FDA in responding to requests for records pursuant to applicable law, including provisions of the FOIA, 5 U.S.C. § 552. I am also aware of the workload obligations of offices that process FOIA requests across the agency.

5.      The statements contained in this declaration are based upon my personal knowledge, upon information I have learned in my official capacity, and upon conclusions I reached based on that knowledge or information.

6.      The purpose of this declaration is to provide an overview of FDA's allocation of FOIA resources, including why FDA cannot reallocate resources from other components of the agency to the FOIA office in the Center for Biologics Evaluation and Research ("CBER"). FDA generally cannot reallocate staff from non-FOIA components because performing disclosure reviews is a specialized skill that requires training and expertise. Moreover, reallocating staff carrying out FDA's important public health responsibilities would be contrary to the agency's public health mission. FDA also cannot reallocate staff from non-CBER FOIA components because each disclosure office has its own specialized responsibilities based on the specific types of records that staff are trained to review. In addition, the other FDA FOIA components cannot assist CBER's FOIA office given their own increased workload obligations in recent years. A

2

reallocation of resources from one over- stretched office to another would have an adverse impact on the agency's ability to meet litigation-imposed processing deadlines and prejudice other important pending requests.

## ALLOCATION OF AGENCY RESOURCES

7.      As detailed in the Declaration of Suzann Burk ("Burk Decl."), ECF No. 16, CBER's FOIA resources are currently stretched to their maximum capacity due to marshaling those resources to comply with court-ordered productions in *Pub. Health & Med. Pros. for Transparency* ("*PHMPT*") *v. FDA*, Civ. A. No. 21-1058 (N.D. Tex.) ("*PHMPT 1*") and *PHMPT v. FDA*, Civ. A. No. 22-0915 (N.D. Tex.) ("*PHMPT 2*").  To meet those production deadlines, and process other requests as it is able, CBER aggressively hired, trained, and restructured as it added new staff. However, the strict enforcement of the 2025 hiring freeze prevented further hiring of staff. *See* Burk Decl. ¶¶ 12, 35. But as explained below, FDA cannot reallocate resources to CBER's FOIA office from other important agency functions or components as a means to address CBER's workload.

8.      FDA's FOIA program is decentralized because of the agency's size, the large number of records generated during the course of agency business, and the subject-matter expertise required to review highly technical/scientific and specific documents created by different components within FDA.  After a FOIA request is received and logged by the Division, the request is assigned to the FDA component reasonably likely to possess responsive records, which then processes the request.  FOIA reviewers within the assigned FDA component process potentially responsive records and then determine whether responsive records should be released in full, redacted in part, or withheld in their entirety under any applicable FOIA exemption or other statutory or regulatory provision.

3

9.      Despite a brief drop at the outset of the COVID-19 pandemic, the number of FOIA requests submitted to FDA has increased in recent years, as has their complexity and the amount of subsequent FOIA litigation.  In fiscal year 2024, FDA received approximately 11,702 new FOIA requests.  This number of requests represents an increase of 12 percent from the previous fiscal year 2023 (10,447 requests received). As of July 22, 2025, FDA received 11,741 FOIA requests for the fiscal year 2025, already exceeding the 2024 incoming requests total. By the end of fiscal year 2024, FDA's pending backlog was 3,893 requests, a ten-percent decrease from 4,349 requests pending at the end of fiscal year 2023. Many recent FOIA requests are more complex and are expected to take longer to process than typical FOIA requests received prior to the beginning of the COVID-19 pandemic.  Requests for information related to COVID-19 often require collaboration among federal agencies because they involve records (such as emails) that may have originated in other agencies.  Department of Justice guidance advises federal agencies to consult with the originating agency for disclosure determinations.  Dep't of Just., *FOIA Update: OIP Guidance: Referral and Consultation Procedures*, https://www.justice.gov/oip/blog/foia-update-oip-guidance-referral-and-consultation-procedures (last accessed August 4, 2025). As a result, FDA regularly collaborates with other federal agencies within the Department of Health and Human Services such as the Centers for Disease Control and Prevention and the National Institutes of Health, about records responsive to requests.  These consultations add both time and complication to the process for responding to FOIA requests.

10.      Coupled with the increased number and complexity of requests, FDA has experienced a substantial increase in FOIA litigation in recent years.  Between calendar years 2018 and 2020, the number of FOIA lawsuits filed against FDA grew by approximately 200%. At the records review and redaction phase, certain FDA components have had to shift some of their FOIA

4

reviewers from responding to FOIA requests in the normal course to almost exclusively processing FOIA requests in litigation. This diversion of staff resources to respond to ever-increasing litigation and impending court deadlines means that fewer FOIA requests are being processed, and at a slower pace, which may contribute to an increase in litigation.

11.    Like CBER, other FDA components' disclosure staff are also over-extended by existing disclosure obligations, many of which concern products or issues similarly important to public health. For example, the following FDA components are processing requests seeking records on, among others: COVID-19 test kits (Center for Devices and Radiological Health); COVID-19 pharmaceutical treatments (Center for Drug Evaluation and Research); infant formula (Human Food Programs); animal drugs (Center for Veterinary Medicine); electronic nicotine delivery systems, i.e., e-cigarettes and their components (Center for Tobacco Products); inspections of regulated industry (Office of Inspections and Investigations); and agency-wide administrative priorities and responsibilities (Office of the Commissioner).

12.    In addition to FOIA, FDA also has numerous other document-processing obligations, including those arising from subpoenas; discovery requests in non-FOIA litigations; oversight requests from Congress; requests from domestic and foreign regulatory bodies; and other statutory disclosure mandates. In some agency offices, the same staff that handles FOIA requests also handles these other disclosure projects because they rely on similar disclosure skills.

13.    Additionally, in 2025, FDA FOIA backlog reduction efforts were hindered by the loss of over 30% of the FOIA staff, mostly senior level employees due to retirement and departure incentives offered by HHS. Most FDA FOIA employees were placed on administrative leave between April 1 and mid-May after receiving Reduction in Force ("RIF") notices. This included CBER's FOIA branch employees.

14.     FDA has taken concrete steps throughout its FOIA offices to reduce backlogs and improve processing time.  Specifically, FDA's FOIA offices are increasing proactive posting online of frequently requested documents to reduce the need for new FOIA requests; continued training of FOIA employees to process a variety of records within their component, to assist with requests pending in their component's complex track; evaluating requests daily in order to shift them to experienced reviewers as needed; and, where possible, proactively contacting FOIA requesters to negotiate the scope of requests to produce records more quickly.  For example, starting in January 2022, the Center for Drug Evaluation and Research brought on seven additional employees (six new FDA employees and one employee returning to the center from the Office of Regulatory Affairs) to assist with FOIA processing.  Similarly, the Center for Devices and Radiological Health completed a process-improvement review of its FOIA program in October 2019, which included identifying hiring needs; updating workflows, processes, and procedures; training reviewers; and additional tracking of FOIA requests. Between September and December 2019 CDRH acquired a multi-year contract, and then a two-year contract in September 2024, for contractors (currently ten) to assist in reducing FOIA backlogs and hired additional full-time reviewers to process FOIA requests and other disclosure tasks. However, FDA's resources to hire additional FOIA staff are limited.  FOIA is an unfunded mandate—that is, it is not a separate "line item" category in legislative appropriations for the agency and, thus, FOIA operations must be funded from general budgetary appropriations ("Budget Authority").  *See, e.g.*, Dep't of Just., *FOIA Update: FOIA Affected by Budget Constraints*, https://www.justice.gov/archives/oip/blog/foia-update-foia-affected-budget-constraints (last accessed August 4, 2025). Budget Authority funds are necessary to cover critical needs across the entire agency—for fiscal year 2024, for example, the agency's Budget Authority estimations

covered activities ranging from ensuring that the human food supply is safe (including the modernization of the country's infant formula supply chain), to curbing the unlawful marketing of tobacco products targeted at youth, to mitigating the harms associated with the prescription opioid epidemic. *See* FDA, *Fiscal Year 2024 Justification of Estimates for Appropriations Committees*, https://www.fda.gov/media/166182/download?attachment (last accessed August 4, 2025). Accordingly, when FDA receives more FOIA requests, there is no specific FOIA funding available for hiring more employees.

15.     Despite the limitations on FDA's resources for FOIA funding, the agency has made extraordinary efforts to maximize efficiencies and hire and train new employees to assist CBER's FOIA office in reducing its backlog and meeting court-ordered productions. *See* Burk Decl. ¶¶ 32, 36. These efforts, along with the agency's request for a stay of cases like this one, represent CBER's best chance of complying with its voluminous court orders and reducing its FOIA backlog, while ensuring that sensitive information remains protected through a careful, line-by-line review of records to be released publicly. The reallocation of staff from non-FOIA components or non-CBER components, on the other hand, are not viable solutions to CBER's unprecedented situation.

16.     FDA generally cannot reallocate staff from non-FOIA components, with very rare exceptions for short-term details. Importantly, it would be contrary to FDA's public health mission to pull staff away from, for example, reviewing cancer treatment applications or conducting counterfeit medication investigations to have them perform work for which they are untrained and unqualified. Moreover, performing disclosure reviews is a specialized skill that requires training and expertise that the vast majority of FDA staff does not have. It is not reasonable to expect that a microbiologist who performs laboratory assays, a pharmacist who reviews drug applications, a

7

badging office employee who issues credentials, or a mail room clerk who organizes mail can simply begin performing disclosure review without significant training. And any offices from which these resources were commandeered would face their own shortfall.

17.    More specifically, it would not be feasible to reallocate staff from non-CBER disclosure offices for two reasons. First, those other offices do not have resources to spare. Assigning disclosure staff from outside CBER to review CBER records would compromise the other offices' ability to keep up with their own disclosure review responsibilities. Second, such re-assignment would be extremely inefficient because disclosure matters are different in the agency's disclosure offices. Each FDA component's disclosure office has its own specialized responsibilities and expertise to ensure consistency and efficiency in reviewing the types of records handled by that office for public release. Although all disclosure staff will be familiar with FOIA's requirements and FDA's general disclosure regulations in 21 C.F.R. Part 20, most centers, including CBER, have their own disclosure regulations outside of 21 C.F.R. Part 20, and staff from each center are trained to review information regularly maintained by their center. For example, CBER FOIA reviewers are familiar with the types of information regularly contained in biologics license applications and are trained to identify information that is exempted from disclosure in those files; CBER FOIA reviewers would not be expected to be familiar with records commonly processed by other parts of the agency, such as premarket tobacco product applications or food additive petitions. The converse is also true; reviewers in FDA's Center for Food Safety and Applied Nutrition are familiar with records regularly maintained by that center and would not have the same expertise as a CBER reviewer when looking at a biologics license application. Thus, disclosure staff in different FDA centers are not interchangeable.

18.    Even when the agency can allocate new monetary resources to hire new disclosure

staff or contractors, it takes substantial time to recruit and hire new staff, bring them on board, and provide them with the necessary training to become competent to perform disclosure reviews. FDA estimates that it takes approximately two years to fully train a new disclosure reviewer. In the meantime, experienced reviewers are needed to closely supervise and review their work—thus decreasing the amount of time that experienced reviewers can spend reviewing records. Indeed, as explained in the Burk Declaration (¶ 36), CBER staff continue to expend significant time on supervision and review of newly hired employees. As a result, it is not reasonable to expect that FDA will be able to respond to CBER FOIA requests more quickly by allocating non-disclosure or non-CBER resources.

## CONCLUSION

19.     In sum, FDA is committed to transparency in all aspects of its work, especially its response to the COVID-19 pandemic. But given the limited number of FDA staff available to perform disclosure reviews and the heavy workload FDA's disclosure offices are facing, it would be unduly burdensome for FDA to reallocate resources from agency components outside of CBER. If required to do so, FDA's ability to perform its other agency functions, including responding to other record requests, would likely be impaired.

\*       \*       \*

9

Pursuant to 28 U.S.C. § 1746, I declare under the penalty of perjury that the foregoing is true and correct.

Executed on August 4, 2025.

Meredith J.
Schlaifer -S

Digitally signed by
Meredith J. Schlaifer -S
Date: 2025.08.04 12:15:30
-04'00'

Meredith Schlaifer
Deputy Director
Division of Headquarters Freedom of Information
Office of Management and Enterprise Services
Office of Operation
Food and Drug Administration
U.S. Department of Health and Human Resources

10